UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEXINGTON INSURANCE COMPANY,

Plaintiff,

-against-

TOKIO MARINE & NICHIDO FIRE INSURANCE
COMPANY LIMITED, as successor to NICHIDO FIRE
& MARINE INSURANCE COMPANY LIMITED,

Defendant.

Civil Action No. 11-0391
(DAB)

LEXINGTON'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
TOKIO MARINE'S MOTION TO DISMISS THE FOURTH CAUSE OF ACTION

Paul R. Koepff
Sarah B. Hargrove
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036
Tel: (212) 326-2000
Fax: (212) 326-2061
Email: pkoepff@omm.com

*Attorneys for Plaintiff Lexington
Insurance Company*

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

LEXINGTON'S COMPLAINT...................................................................................2

   The Allegations In The Complaint ..................................................................... 3

   The Five Causes of Action Against Tokio Marine .................................... 7

   Tokio Marine's Answer ...................................................................... 9

ARGUMENT ...................................................................................10

POINT I       LEXINGTON MAY ASSERT CLAIMS IN THE ALTERNATIVE,
              INCLUDING A CLAIM FOR UNJUST ENRICHMENT...................................10

POINT II     TOKIO MARINE IS DISPUTING KEY TERMS OF THE
              REINSURANCE AGREEMENT .........................................................17

POINT III    TOKIO MARINE ERRONEOUSLY RELIES UPON WHOLLY
              INAPPLICABLE AND DISTINGUISHABLE DECISIONS .............................13

POINT IV    LEXINGTON PROPERLY ALLEGED A CLAIM IN THE
              ALTERNATIVE FOR UNJUST ENRICHMENT .................................17

CONCLUSION...................................................................................20

TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

AHA Sales, Inc. v. Creative Bath Products,
    58 A.D.3d 6, 867 N.Y.S.2d 169 (2d Dep't 2008) ...................................................... 11

Air Atlanta Aero Engineering Ltd. v. SP Aircraft Owner I, LLC,
    637 F. Supp. 2d 185 (S.D.N.Y. 2009) ...................................................................... 15

AM Cosmetics Inc. v. Solomon,
    67 F. Supp. 2d 312 (S.D.N.Y. 1999) ...................................................................... 10

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009) .......................................................................................... 18

Beth Israel Medical Center v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.,
    448 F.3d 573 (2d Cir. 2006) ...................................................................... 14, 15, 17

Chambers v. Time Warner, Inc.,
    282 F. 3d 147 (2d Cir. 2002) ................................................................................ 18

Clark-Fitzpatrick, Inc. v. Long Island Rail Road Co.,
    70 N.Y.2d 382, 521 N.Y.S.2d 653 (N.Y. 1987) .................................................... 16

Compudyne Corp. v. Shane,
    453 F. Supp. 2d 807 (S.D.N.Y. 2006) .................................................................. 18

Consolidated Risk Services, Inc. v. Automobile Dealers WC Self Ins. Trust,
    2007 WL 951565 (N.D.N.Y. March 27, 2007)...................................................... 11

Crowley v. VisionMaker, LLC,
    512 F. Supp. 2d 144 (S.D.N.Y. 2007) .............................................................. 13, 14

Erickson v. Pardus,
    551 U.S. 89, 127 S. Ct. 2197 (2007).................................................................... 18

Gant v. Wallingford Bd. of Educ.,
    893 F. Supp. 1224 (S.D.N.Y. 1995) .................................................................... 15

Foxley v. Sotheby's Inc.,
    893 F. Supp. 1224 (S.D.N.Y. 1995) .................................................................... 15

In re Check Point Software Techs. Ltd. Sec. Litig.,
    2006 U.S. Dist. LEXIS 24317 (S.D.N.Y. Apr. 25, 2006)...................................... 18

In re Tower Auto. Sec. Litig.,
    483 F. Supp. 2d 327 (S.D.N.Y. 2008) .................................................................. 18

Larson v. Eney,
   2009 WL 321256 (S.D.N.Y. Feb. 10, 2009)...........................................................2, 10-11, 13

Las Olas Investor Group, LLC v. Las Olas Tower Co., Inc.,
   2008 WL 80741 (S.D.N.Y. Jan. 2, 2008) ............................................................... 11

MacPhee v. Verizon Communications, Inc.
   2008 WL 162899 (S.D.N.Y. Jan. 15, 2008) ....................................................... 2, 13

Newman & Schwartz v. Asplundh Tree Expert Co.,
   102 F.3d 660 (2d Cir. 1996) ............................................................... 2, 10

St. John's University, New York v. Bolton,
   --- F. Supp. 2d ---, 2010 WL 5093347 (E.D.N.Y. Dec. 10, 2010)...................................2, 12-13

Tsereteli v. Residential Asset Securitization Trust, 2006-A8,
   692 F. Supp. 2d 387 (S.D.N.Y. 2010) ................................................... 18

Waxman v. Envipco Pick Up & Processing Services, Inc.,
   2003 WL 22439796 (S.D.N.Y. Oct. 28, 2003) ....................................... 15

## RULES

Fed. R. Civ. P. 8(d) ............................................................................................1, 10, 11

Plaintiff Lexington Insurance Company ("Lexington") respectfully submits this memorandum of law in opposition to the motion to dismiss Count IV of the Complaint filed by Tokio Marine & Nichido Fire Insurance Company Limited, as successor to Nichido Fire & Marine Insurance Company Limited ("Tokio Marine").

<u>PRELIMINARY STATEMENT</u>

Tokio Marine's motion to dismiss Count IV should be denied based on various decisions of the Second Circuit and this Court, which have repeatedly rejected this kind of motion to dismiss a claim for unjust enrichment.  A party (such as Lexington) is entitled to assert "in the alternative" a claim for "unjust enrichment," where the defendant (Tokio Marine) contests the terms of the agreement in response to a breach-of-contract claim.  Simply put, a party such as Tokio Marine is not entitled to "have it both ways"—namely, it contests a contract claim by disputing the material terms of the agreement, and then contends the plaintiff may not assert an alternative claim for unjust enrichment.

In this action, as its primary claim for relief, Lexington asserts that Tokio Marine breached its agreement to reinsure 100% of Lexington's First and Second Layer of Excess Coverage by not paying Lexington $7.4 million, which Lexington had paid its insured Port Authority for property damage covered under its excess coverage.  In taking the position that it owes no reinsurance for Lexington's payment of $7.4 million, Tokio Marine has contested the terms of the reinsurance agreement, including a key term that Tokio Marine must "follow the fortunes" of Lexington.  For this reason, Lexington has asserted an alternative claim of unjust enrichment.

In analogous situations, where a defendant has sought to dismiss an alternative claim for unjust enrichment in a contract action, the Second Circuit and this Court have denied such a motion, holding that, under Fed. R. Civ. P. 8(d), the plaintiff is entitled to assert an alternative

1

theory where the defendant disputes a term in the contract or where there is a dispute regarding the scope of the contract.  Indeed,  Judge Chin (before becoming a member of the Second Circuit) denied a motion to dismiss a claim of unjust enrichment rejecting an argument that a claim of unjust enrichment could only be asserted "where there is no agreement."  Judge Chin correctly reasoned that a claim for unjust enrichment could be asserted "in the alternative" under the Federal Rules of Civil Procedure.[1]  See Larson v. Eney, No. 08 Civ. 3513 (DC), 2009 WL 321256, at *2 (S.D.N.Y. Feb. 10, 2009); see also St. John's University, New York v. Bolton, --- F. Supp. 2d ---, No. 08-CV-5039 (NGG), 2010 WL 5093347, at *1 (E.D.N.Y. Dec. 10, 2010) (where there was a dispute regarding the terms of an agreement, unjust enrichment claim could be plead in the alternative); MacPhee v. Verizon Communications, Inc., No. 06-CV-7870 (BSJ), 2008 WL 162899, at *2 (S.D.N.Y. Jan. 15, 2008) (same).

Finally, as we demonstrate below, the decisions relied upon by Tokio Marine are inapplicable and distinguishable.  None of those decisions involve a situation like here, where the defendant was disputing a key term of the agreement in refusing to pay the plaintiff and where the defendant-reinsurer had agreed to reinsure 100% of what the plaintiff-reinsured paid to its insured.  Otherwise, Tokio Marine will be unjustly enriched under the circumstances alleged in the complaint.

<u>LEXINGTON'S COMPLAINT</u>

In this action, Lexington seeks reimbursement from its reinsurer, Tokio Marine, for amounts that Lexington paid its policyholder to settle a coverage dispute regarding the terms of Lexington's insurance coverage, which was 100% reinsured by Tokio Marine.  (Compl. ¶¶ 1-6.)

---

[1]     Much earlier, the Second Circuit also allowed a claim for unjust enrichment to stand, because that claim was "properly pleaded as such in the alternative to the contractual claim."  See Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 663 (2d Cir. 1996).

We briefly review below the allegations in support of the contract claim and also in support of the claim in the alternative for unjust enrichment.

The Allegations In The Complaint

In May 2001, Port Authority placed by renewal or new subscription its program of all-risk first-party property insurance, which was in effect for the policy period from June 1, 2001 to June 1, 2002.  (Compl. ¶ 21.)  Under this insurance program, Port Authority's primary carrier was American Home Assurance Company ("American Home"), which issued a primary policy to Port Authority with a per-occurrence limit of $10 million (the "American Home Policy").  (Compl. ¶¶ 22-25.)  Lexington issued part of two layers of excess property coverage to Port Authority (the "Lexington First-Layer Coverage" and the "Lexington Second-Layer Coverage").  (Compl. ¶¶ 26, 32.)  The Lexington First-Layer Coverage provided a per-occurrence limit equal to an $11.5 million part of a $40 million insurance layer that covered property damage sustained by Port Authority in excess of $10 million.  (Compl. ¶ 26.)  The Lexington Second-Layer Coverage provided a per-occurrence limit equal to a $9.5 million part of a $50 million insurance layer that covered property damage sustained by Port Authority in excess of $50 million.  (Compl. ¶ 32.)

Lexington issued its First-Layer and Second-Layer Coverage as "fronting" policies for Tokio Marine.  (Compl. ¶¶ 27, 33.)  Under this "fronting" arrangement, Tokio Marine agreed to reinsure 100% of the risk under the Lexington First-Layer and Second-Layer Coverage.  (Compl. 41-45.)  In reinsuring Lexington's coverage, Tokio Marine was obligated to "follow the fortunes" of Lexington.  (Compl. ¶ 46.)

As a result of the two September 11, 2001 terrorist attacks on the World Trade Center Towers, Port Authority sustained extensive property damage to its buildings located near the World Trade Center Towers.  (Compl. ¶¶ 47-53.)  In total, Port Authority sustained damage in

excess of $1 billion, which was equivalent to more than twice the value of Port Authority's per-occurrence insurance tower.  (Compl. ¶ 54.)

There was a coverage dispute between the tenants of the World Trade Center Towers and their property insurers regarding the number of occurrences arising from the two September 11 attacks.  (Compl. ¶¶ 55.)  The World Trade Center Tower tenants argued that the attacks constituted two occurrences, which would entitle the tenants to two times the property insurers' limits, while the property insurers argued that there was only one occurrence, which would entitle the tenants to only one limit.  (Compl. ¶¶ 56-57.)  On motions for summary judgment, certain insurers prevailed on their position that there was one occurrence based on their unique policy language, but the court ruled that there were issues of fact with respect to the number of occurrences for other insurers.  (Compl. ¶ 58.)  Following a trial, a jury determined that the two September 11 attacks constituted two separate occurrences, entitling the World Trade Center Tower tenants to two times their property insurers' limits.  (Compl. ¶ 59.)  The District Court entered judgment that there were two separate occurrences, and the Second Circuit affirmed this judgment.  (Compl. ¶¶ 60-61.)

After the September 11 attacks, Port Authority likewise took the position that there were two occurrences resulting in a doubling of its coverage and, on this basis, submitted an insurance claim to its insurers seeking to recover over $1 billion for the damage it sustained as a result of the September 11 attacks.  (Compl. ¶ 62.)  Port Authority's insurers only paid one per-occurrence limit to Port Authority, including Lexington, which paid $11.5 million under its First-Layer Coverage and $9.5 million under its Second-Layer Coverage.  (Compl. ¶¶ 63-66.)  Lexington submitted a reinsurance claim for these amounts to Tokio Marine, which fully reimbursed Lexington for its $11.5 million and $9.5 million payments.  (Compl. ¶ 67.)

Like the World Trade Center Tower tenants, Port Authority argued that there was still available coverage because the two September 11 attacks constituted two separate occurrences and therefore it was entitled to recover a second payment from its insurers in the amount of its full per-occurrence limits.  (Compl. ¶ 68.)  Port Authority's insurers, including Lexington, disputed Port Authority's argument, and the parties engaged in a coverage litigation (the "Port Authority Litigation").  (Compl. ¶¶ 69-73.)  Thus, there was a serious risk that Lexington would have been liable for a second round of $11.4 million and $9.5 million payments under its First-Layer and Second-Layer Coverage if Port Authority demonstrated there was a second occurrence.[2]  (Compl. ¶¶ 71-72.)

To reach any settlement in the Port Authority Litigation, it was necessary for Port Authority to accept less than its full limits from each of its insurers and for each of Port Authority's insurers to pay some portion of their respective limits to Port Authority.  (Compl. ¶¶ 74-75.)  Lexington's counsel advised Tokio Marine at various points that any settlement that Lexington entered into would require an allocation of a total settlement amount among the American Home Policy, the Lexington First-Layer Coverage, and the Lexington Second-Layer Coverage.  (Compl. ¶¶ 76-79.)  Lexington's counsel suggested that the appropriate allocation of any settlement should be pro rata by limits among the policies.  (Id.)  Tokio Marine did not object to the proposed pro-rata allocation at the time that Lexington suggested it.  (Id.)

After extensive negotiations, Port Authority, American Home, and Lexington entered into a settlement agreement, under which the $11 million settlement amount was allocated pro rata by limits between the American Home Policy, the Lexington First-Layer Coverage, and the

---

[2]    In other words, given that Port Authority had incurred more than $1 billion in covered damages, should it prevail on its two-occurrence theory, Lexington would have had to pay Port Authority another $21 million in excess coverage and undeniably Tokio Marine would have to pay 100% of that amount to Lexington pursuant to the reinsurance agreement.

Lexington Second-Layer Coverage.  (Compl. ¶¶ 83-87.)  Specifically, the parties agreed to allocate 11.5/31 (37.10%) of the $11 million settlement—$4,080,645.16—to the Lexington First-Layer Coverage and to allocate 9.5/31 (30.65%) of the $11 million settlement—$3,370,967.74—to the Lexington Second-Layer Coverage.  (Compl. ¶ 87.)  In return for these payments, Port Authority forever released all claims against Lexington under its First-Layer and Second-Layer Coverage.  (Compl. ¶ 89.)  Tokio Marine was benefited by the settlement because the settlement resolved all amounts that Tokio Marine would ever have to pay under the "fronting" arrangement and eliminated the risk that Tokio Marine would be required to reimburse Lexington for a second round of per-occurrence limits at $11.5 million and $9.5 million.  (Compl. ¶ 90.)

On April 21, 2010, Lexington advised Tokio Marine of its settlement with Port Authority and that the settlement amount had been allocated pro rata by limits, as Lexington's counsel had previously advised Tokio Marine.  (Compl. ¶ 91.)  On April 26, 2010, Tokio Marine announced that it would only reimburse Lexington for $1 million, because Tokio Marine contended that $10 million of the settlement amount should have been allocated to the American Home Policy before any settlement money was allocated to the Lexington First-Layer Coverage.  (Compl. ¶ 92.)  Lexington ultimately submitted a claim for reinsurance for $4,080,645.16 with respect to its First-Layer Coverage and for $3,370.967.74 with respect to the Lexington Second-Layer Coverage, but Tokio Marine rejected the claim because Tokio Marine maintained that $10 million should have been allocated to the American Home Policy.  (Compl. ¶¶ 93-95.)

Tokio Marine is obligated to "follow the fortunes" of Lexington.  (Compl. ¶¶ 101-02.) Under the "follow the fortunes" doctrine, a reinsurer must indemnify a ceding insurer for the insurer's settlement with an insured of a claim that is covered or potentially covered by the insurer as long as the settlement is fair, reasonable, and made in good faith.  (Compl. ¶ 103.)

The Five Causes of Action Against Tokio Marine

In its First Cause of Action, Lexington seeks a declaration that Tokio Marine's position that there could be no coverage under the Lexington First-Layer Coverage or the Lexington Second-Layer Coverage until Port Authority collected underlying insurance limits is incorrect.[3] (Compl. ¶ 110.)  Lexington contends that, if there were two occurrences arising from the September 11 attacks, Port Authority's claim was covered or partially covered under the First-Layer Coverage and the Second-Layer Coverage, even if Port Authority did not collect the underlying limits from the underlying carriers.  (Compl. ¶ 107.)  In the alternative, Lexington contends that it is entitled to reinsurance because it resolved for $7.4 million a potentially covered claim for $21 million.  (Compl. ¶ 108.)

In its Second Cause of Action, Lexington pled that in reinsuring Lexington, Tokio Marine was obligated to "follow the fortunes" of Lexington with respect to Lexington's $11 million settlement with the Port Authority.  (Compl. ¶ 126.)  Lexington faced a reasonable risk that there was a second occurrence arising from the September 11 attacks, which would have required Lexington to pay a total of $21 million in satisfaction of its per-occurrence limits.  (Compl. ¶ 119.)  The settlement agreement to allocate $7.4 million of the $11 million settlement amount to the Lexington First-Layer Coverage and the Lexington Second-Layer Coverage was fair, reasonable, and entered into in good faith.  (Compl. ¶ 121.)  Under the "follow the fortunes" doctrine, Tokio Marine was obligated to reimburse Lexington for settlements of covered or potentially covered risks that Lexington entered into in good faith.  (Compl. ¶ 124.)

In its Third Cause of Action, Lexington seeks damages in the amount of $7.4 million, along with prejudgment interest, for Tokio Marine's breach of the reinsurance agreement.

---

[3]   Lexington has sought permission from this Court to file a motion for judgment on the pleadings with respect to the First Cause of Action for the reasons set forth in its March 7, 2011 letter to the Court.

(Compl. ¶ 128-29.)  Tokio Marine breached the reinsurance agreement by failing to reimburse Lexington for the $7.4 million allocated to the Lexington First-Layer and Second-Layer Coverage under Lexington's settlement with Tokio Marine.  (Id.)

In its Fourth Cause of Action, Lexington pled, in the alternative, a claim of unjust enrichment seeking damages in the amount of $7.4 million, along with prejudgment interest.[4] (Compl. ¶ 137.)  Lexington alleges that Tokio Marine undeniably benefited from Lexington's settlement with Port Authority by receiving the benefit from (1) the release that Lexington obtained for all claims on the coverage that Tokio Marine reinsured, (2) Lexington's resolution of what Tokio Marine would have paid under the "fronting" arrangement, and (3) Lexington's elimination of the risk that Port Authority would recover up to $21 million, along with prejudgment interest, which amount Tokio Marine would have been obligated to pay pursuant to the reinsurance agreement.  (Compl. ¶¶ 8, 90, 136.)  Lexington alleges that it paid for the settlement that benefited Tokio Marine and that Tokio Marine benefited at Lexington's expense. (Compl. ¶¶ 8, 131-37.)  Finally, Lexington alleges that fairness and equity require Tokio Marine to reimburse Lexington for expending money in a way that benefited Tokio Marine.  (Compl. ¶¶ 8, 133.)  Specifically, Lexington alleges that it was always intended for Tokio Marine to pay the full amount of any settlements of covered or potentially covered losses and that Lexington's settlement was fair, reasonable, and in good faith.  (Compl. ¶¶ 133-35.)

In its Fifth Cause of Action, Lexington seeks damages in the amount of $15,426.72, along with prejudgment interest, for Tokio Marine's breach of the reinsurance agreement. (Compl. ¶¶ 139-44.)  Tokio Marine breached the reinsurance agreement by failing to reimburse Lexington for $15,426.72 that Lexington incurred in the Port Authority Litigation.  (Id.)

---

[4]   Anticipating that Tokio Marine would dispute it had an obligation to "follow the fortunes" in reinsuring Lexington, Lexington asserted this unjust enrichment claim as an alternative theory why Tokio Marine should pay $7.4 million.

Tokio Marine's Answer

In its Answer, while it admits that there is a reinsurance agreement, Tokio Marine disputes key terms of that reinsurance agreement, including in particular the term concerning its obligation to pay pursuant to the "follow the fortunes" doctrine.  Specifically, Tokio Marine denies that the reinsurance agreement requires Tokio Marine to follow the fortunes of Lexington, whether through express or implicit agreement, a course of dealing and/or as a matter of custom and practice.  (Answer ¶¶ 112-113.)  Tokio Marine denies that the settlement payment Lexington made to Port Authority is within the scope of the reinsurance agreement.  (Answer, Additional Defenses ¶ 31.)  In support of its "no pay" position, Tokio Marine argues that Lexington had no coverage obligation to Port Authority, because Port Authority did not collect the full amount of all underlying limits below Lexington's excess coverage.  (Answer, Additional Defenses ¶¶ 24-31.)  Finally, Tokio Marine claims that because Lexington allegedly had no coverage obligation to Port Authority, Lexington's settlement is outside the scope of the reinsurance agreement.  (See id.)

In short, Tokio Marine has not admitted or conceded to all of the key terms of the reinsurance agreement.  Rather, Tokio Marine is denying any obligation to pay Lexington, because Tokio Marine contends it has no obligation to "follow the fortunes" pursuant to the reinsurance agreement.  This is an important point which Tokio Marine overlooks in moving to dismiss Lexington's unjust enrichment claim.  Moreover, Tokio Marine contends that there is a requirement in the reinsurance agreement that the full amount of all underlying limits must be paid before Tokio Marine is obligated to pay any reinsurance to Lexington.

ARGUMENT

POINT I

LEXINGTON MAY ASSERT CLAIMS IN THE ALTERNATIVE,
INCLUDING A CLAIM FOR UNJUST ENRICHMENT

Tokio Marine's motion to dismiss should be denied, because Lexington has in Count IV

properly pled a claim for unjust enrichment against Tokio Marine in the alternative to

Lexington's breach of contract claim.  Rule 8(d) of the Federal Rules of Civil Procedure

expressly allows parties to allege alternative theories:  [A] "party may state as many separate

claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3).[5]

A claim for unjust enrichment may be pled in the alternative to a breach of contract claim.

In Newman & Schwartz v. Asplundh Tree Expert Co., Inc., 102 F.3d 660, 663 (2d Cir. 1996)

(applying New York law), the Second Circuit held:

> Counts Two and Three for quantum meruit and unjust enrichment
> were quite properly subsumed by the district court into a single
> count for restitution . . . and were properly pleaded as such in the
> alternative to the contractual claim of Count One.

In AM Cosmetics Inc. v. Solomon, 67 F. Supp. 2d 312, 322 (S.D.N.Y. 1999), the

defendant moved to dismiss an unjust enrichment claim, arguing that various employment and

stock agreements barred any such claim.  In denying the motion under New York law, the court

held that "[p]laintiffs may allege alternative theories . . .", despite the fact that defendants

admitted the existence of the agreements.  Id.

In Larson v. Eney, No. 08 Civ. 3513 (DC), 2009 WL 321256, at *2 (S.D.N.Y. Feb. 10,

2009) (applying New York law), Judge Chin stated:

> Defendant also moves to dismiss plaintiff's breach of implied
> contract and unjust enrichment claims on the ground that the two

---

[5]     See also Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively
or hypothetically, either in a single count or defense or in separate ones.").

> claims are inconsistent, insofar as unjust enrichment only applies
> where there is no agreement.  The motion is denied.  Pleading in
> the alternative is expressly permitted under the Federal Rules.

Notably, in <u>Larson</u>, the defendant conceded that she entered into an agreement with plaintiff,

"but a dispute arose as to the terms of repayment."  <u>Id.</u> at *1.

In <u>Las Olas Investor Group, LLC v. Las Olas Tower Co., Inc.</u>, No. 06 Civ.

7781(SHS)(FM), 2008 WL 80741, at *3 (S.D.N.Y. Jan. 2, 2008) (applying New York law),

Magistrate Judge Maas stated:

> Rule 8(e) of the Federal Rules of Civil Procedure expressly permits
> a plaintiff to plead in the alternative when it ha[s] not been
> determined with finality that there [is] a valid contract between the
> parties, or where one of the parties dispute[s] the validity of the
> contract.

In <u>Consolidated Risk Services, Inc. v. Automobile Dealers WC Self Ins. Trust</u>, No. 06-

CV-871 (FJS/RFT), 2007 WL 951565, at *7 (N.D.N.Y. March 27, 2007) (applying New York

law), Judge Scullin noted that "courts should not dismiss an unjust enrichment claim where there

is a dispute about whether the contract covers the particular controversy."[6]

In short, as a matter of proper and appropriate procedure, Lexington is permitted to assert

a claim for unjust enrichment in the alternative to its breach of contract claim.  There is

absolutely nothing improper procedurally with Lexington's unjust enrichment claim because it is

allowed under Fed. R. Civ. P. 8(d) and the case law.

---

[6]   <u>See also</u> <u>AHA Sales, Inc. v. Creative Bath Prods., Inc.</u>, 58 A.D.3d 6, 867 N.Y.S.2d 169 (2d Dep't 2008) (where
there was a dispute regarding whether the contract covered the dispute between the parties, the lower court erred
in dismissing unjust enrichment claim).

POINT II

TOKIO MARINE IS DISPUTING KEY
TERMS OF THE REINSURANCE AGREEMENT

In moving to dismiss Lexington's alternative claim for unjust enrichment, Tokio Marine ignores the fact that it is disputing a key term under the reinsurance agreement obligating it to pay $7.4 million to Lexington.  For example, in refusing to pay Lexington, Tokio Marine denies that there is any express or implied term in the reinsurance agreement that it must "follow the fortunes" of Lexington.  (Answer ¶¶ 112-113.)  In contrast, Lexington contends that Tokio Marine is obligated to "follow the fortunes," either as an express or implied term of the reinsurance agreement.  See Counts II and III.  In other words, there is a dispute between Lexington and Tokio Marine about whether there is an express or implied term "to follow the fortunes" in the reinsurance agreement.

In addition, as another ground for refusing to pay Lexington, Tokio Marine argues that another term of its reinsurance agreement is that under the Lexington First-Layer of Excess Coverage and the Second-Layer of Excess Coverage, the full amount of all limits underlying such excess coverage in fact be paid before Lexington may make any payment to its insured.  (Answer, Additional Defenses ¶¶ 24-31.)  Lexington disputes that there is any such requirement as part of the reinsurance agreement.

Accordingly, where as here, there are disputes over what terms are or are not in the reinsurance agreement, Lexington is entitled to assert the alternative claim of unjust enrichment against Tokio Marine.  See Point I.

Moreover, a motion to dismiss an unjust enrichment claim will also be denied if there is a dispute over the scope of the contract or a dispute over a contractual provision.  For example, in St. John's University, New York v. Bolton, --- F. Supp. 2d ---, No. 08-CV-5039 (NGG), 2010

WL 5093347, at *1 (E.D.N.Y. Dec. 10, 2010), the plaintiff university sued defendant professors, alleging that the defendants concealed research they conducted at the university that yielded patentable results to which the university was entitled.  The plaintiff and defendants were parties to four agreements that determined the rights and interests in intellectual property created using plaintiff's facilities.  Id. at *3.  The defendants moved to dismiss plaintiff's unjust enrichment claim on the grounds that defendants' alleged conduct was governed by those four agreements. Id. at *30.  The court, noting that defendants' argument was "plainly premature" at the motion to dismiss stage, refused to dismiss the unjust enrichment claim because the defendants disputed certain terms in the contracts at issue, including "the scope and enforceability of the assignment and revenue-sharing terms in the [contracts] as alleged."  Id. at *30-31.

In MacPhee v. Verizon Communications, Inc., No. 06-CV-7870 (BSJ), 2008 WL 162899, at *2 (S.D.N.Y. Jan. 15, 2008), there was no dispute that there was a valid employment contract between the parties, but there was a dispute as to whether that employment contract required the defendant to pay the plaintiff a performance bonus.  The MacPhee court denied the defendant's motion to dismiss the plaintiff's unjust enrichment claim.  Id. at *6.  See also Larson, 2009 WL 321256, at *2 (refusing to dismiss unjust enrichment claim where there was a dispute regarding the terms of the agreement).

POINT III

TOKIO MARINE ERRONEOUSLY RELIES UPON
WHOLLY INAPPLICABLE AND DISTINGUISHABLE DECISIONS

In moving to dismiss the unjust enrichment claim, Tokio Marine relies upon wholly inapplicable and distinguishable decisions.

Tokio Marine erroneously relies upon Crowley v. VisionMaker, LLC, 512 F. Supp. 2d 144, 153-154 (S.D.N.Y. 2007) (Batts, J.), where this Court dismissed the breach-of-contract

claim and the alternative unjust enrichment claim, because the plaintiff itself had failed to perform its obligations under the contract.  Id. at 153.  In ruling that the plaintiff failed to perform its obligations, this Court rejected the plaintiff's argument that the scope of one contractual provision was ambiguous:  "The Court finds that the Agreement is clear and unambiguous as to its scope."  Id.  Notably, both plaintiff and defendant agreed to the critical terms of the agreement, and once this Court found that the language at issue was unambiguous, there was no remaining dispute between the parties regarding the scope of the agreement.  Id. Therefore, Crowley is wholly inapplicable to the instant motion.  Here, Lexington has alleged that the reinsurance agreement contains a provision requiring Tokio Marine to follow the fortunes of Lexington, but Tokio Marine denies the existence of any such provision.  (Answer ¶¶ 112-113.)  Moreover, Tokio Marine contends that the reinsurance agreement contains a term requiring the underlying limits to be collected in full before Tokio Marine has any obligation to provide any reinsurance to Lexington.  (Answer, Additional Defenses ¶¶ 24-31.)  Thus, there is a dispute between the parties regarding the terms and scope of the agreement that was absent in Crowley.

For several reasons, Tokio Marine also erroneously relies upon Beth Israel Medical Center v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d 573, 586 (2d Cir. 2006).  First, the Beth Israel court did not rule on a motion to dismiss, but rather on a motion for summary judgment.  Id. at 575-76.  Thus, there was no issue in Beth Israel whether the plaintiff could assert an alternative claim for unjust enrichment at an early stage in the proceedings.  Here, it is premature to dismiss Lexington's alternative claim.  Second, the Beth Israel court granted summary judgment regarding the payment terms of the contracts at issue.  Id. at 584.  Here, Tokio Marine has not moved for summary judgment regarding the disputed terms of the

reinsurance agreement.  Third, in <u>Beth Israel</u>, the Second Circuit granted summary judgment

dismissing the unjust enrichment claim because there was no dispute over the key terms or scope

of the contracts at issue:

> As we have determined that valid, enforceable implied-in-fact
> contracts existed between [defendant] and [plaintiff] and that these
> contracts governed the particular subject matter of this case, the
> unjust enrichment claims of [plaintiff] are precluded.

<u>Id.</u> at 587.  Here, Tokio Marine disputes that the reinsurance agreement requires it to follow the

fortunes of Lexington and disputes that the reinsurance agreement requires it to reinsure

Lexington for settlements made without the insured's collection of all underlying limits in full.

Tokio Marine cites several cases that are wholly inapplicable because the cases do not

address a situation where there is a dispute regarding the terms or scope of an agreement.  In

<u>Foxley v. Sotheby's Inc.</u>, 893 F. Supp. 1224, 1234 (S.D.N.Y. 1995), the court determined that an

undisputed sale contract governed the subject matter of the unjust enrichment claim.  In <u>Air

Atlanta Aero Engineering Ltd. v. SP Aircraft Owner I, LLC</u>, 637 F. Supp. 2d 185, 196 (S.D.N.Y.

2009), the court held "that a quasi-contractual claim against a third party must be dismissed

when an <u>undisputedly</u> valid and enforceable written contract governs the same subject matter"

(emphasis added).  In <u>Waxman v. Envipco Pick Up & Processing Services, Inc.</u>, the court held

that "[plaintiff] has not alleged facts that raise a 'bona fide dispute as to the existence of' the

Purchase and Employment Agreements . . . ."  No. 02 Civ. 10132 (GEL), 2003 WL 22439796, at

*12 (S.D.N.Y. Oct. 28, 2003).  Here, there is a genuine dispute regarding principal terms of the

reinsurance agreement, including whether the reinsurance agreement requires Tokio Marine to

follow the fortunes of Lexington and whether the reinsurance agreement requires Tokio Marine

to reinsure Lexington for settlements made without collection of the underlying limits in full.

In <u>Clark-Fitzpatrick, Inc. v. Long Island Rail Road Co.</u>, 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 656 (1987), the Court of Appeals for the state of New York held that quasi-contractual claims should only be dismissed due to the existence of a contract "where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and <u>the scope of which clearly covers the dispute between the parties</u>" (emphasis added).  If anything, <u>Clark-Fitzpatrick</u> supports the proposition that Lexington may assert a claim for unjust enrichment in the alternative because there is a dispute as to whether the reinsurance agreement covers the controversy between the parties.  Moreover, in <u>Clark-Fitzpatrick</u>, "[I]t is undisputed that the relationship between the parties was defined by a written contract, fully detailing all applicable terms and conditions . . . ."  70 N.Y.2d at 389, 521 N.Y.S.2d at 656.  Here, the situation is exactly the opposite:  there is a dispute between the parties regarding the terms and the scope of the reinsurance agreement.

This Court should not permit Tokio Marine to eliminate Lexington's unjust enrichment claim due to the existence of the reinsurance agreement where Tokio Marine disputes the principal terms of that agreement.  In its motion to dismiss, Tokio Marine acknowledges that the reinsurance agreement is enforceable and that the agreement governs the conduct at issue here.[7]  But in its Answer, as described above, Tokio Marine disputes two key terms of the reinsurance agreement.  (Answer ¶¶ 112-13; Answer, Additional Defenses ¶¶ 24-31.)  Tokio Marine cannot have it both ways.  If Tokio Marine wishes to dispute terms of the reinsurance agreement and the scope of the reinsurance agreement, Tokio Marine cannot simultaneously obtain dismissal of Lexington's unjust enrichment claim.

---

[7]    Tokio Marine Mtn. to Dismiss 2, 4-5.

POINT IV

LEXINGTON PROPERLY ALLEGED A CLAIM IN THE
ALTERNATIVE FOR UNJUST ENRICHMENT

It cannot be disputed that if Lexington had not settled but litigated the issue of a second occurrence, Lexington faced a serious risk of paying a second per-occurrence limit of $21 million to Port Authority.  The two-occurrence issue in the context of the September 11 attacks had been litigated and lost by insurers in a decision affirmed by the Second Circuit.  Lexington reasonably and in good faith decided to settle its dispute with Port Authority for $7.4 million, a more than 60% discount, thereby avoiding the risk of paying $14 million on top of that. Lexington essentially obtained a settlement discount of more than 60% from the amount sought by Port Authority, where the two-occurrence issue had been previously litigated and lost by insurers.  Thus, Tokio Marine was a clear and direct beneficiary of this settlement, because it would have indisputably reinsured 100% of the $21 million, had Lexington litigated and lost the two-occurrence issue.  For this reason, Tokio Marine would be unjustly enriched if it succeeds on its position that it was not obligated to follow the fortunes of Lexington or that the reinsurance agreement required collection of all underlying limits.

While not entirely clear, Tokio Marine also appears to argue that Lexington has failed to properly allege a claim for unjust enrichment.  The Court should reject that argument because (1) Lexington has indeed properly alleged all of the necessary elements of an unjust enrichment claim, and (2) under well-established rules governing a motion to dismiss, Tokio Marine's arguments are wrong as a matter of law.

To allege a claim for unjust enrichment under New York law, a plaintiff must allege that "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  Beth Israel Medical Center, 448 F.3d at 586-87.  Moreover, in

deciding whether Lexington has asserted a viable unjust enrichment claim, this Court should

follow well-established principles, which we summarize below:

- In ruling on a motion to dismiss made pursuant to Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true.  Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007).

- "In deciding a motion to dismiss, a court ordinarily accepts as true all well pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor." Tsereteli v. Residential Asset Securitization Trust, 2006-A8, 692 F. Supp. 2d 387, 390 (S.D.N.Y. 2010).

- In addition, the Court must "construe[] the complaint liberally" and "'draw[] all reasonable inferences in the plaintiff's favor.'"  In re Tower Auto. Sec. Litig., 483 F. Supp. 2d 327, 334 (S.D.N.Y. 2007) (quoting Chambers v. Time Warner, Inc., 282 F. 3d 147, 152 (2d Cir. 2002)).

- "The issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims.'"  In re Check Point Software Techs. Ltd. Sec. Litig., No. 03 Civ. 6594 (RMB), 2006 U.S. Dist. LEXIS 24317, at *7 (S.D.N.Y. Apr. 25, 2006) (quoting Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995)).

- The party seeking dismissal has a substantial burden under Rule 12(b)(6). Compudyne Corp. v. Shane, 453 F. Supp. 2d 807, 817 (S.D.N.Y. 2006).

- "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

Lexington has more than sufficiently alleged, in the alternative, a claim for unjust

enrichment.  Indeed, other than arguing that Lexington may not simultaneously assert a claim for

breach of contract and a claim for unjust enrichment, nowhere did Tokio Marine explain or

demonstrate what particular allegations were missing in order to assert a viable claim for unjust

enrichment.

Lexington clearly alleged that Tokio Marine benefited from Lexington's settlement with

Port Authority.  (Compl. ¶¶ 8, 90, 136.)  Tokio Marine was benefited by the settlement because

the settlement resolved all amounts that Tokio Marine would ever have to pay under the

"fronting" arrangement by obtaining a complete release of any further coverage that was reinsured by Tokio Marine.  (Compl. ¶¶ 8, 90.)  The settlement also eliminated the risk that Tokio Marine would be required to reimburse Lexington for a second round of per-occurrence limits for $21 million.  (Compl. ¶ 90.)

Lexington alleged that Tokio Marine's benefit was at Lexington's expense because Lexington paid for the settlement.  (Compl. ¶¶ 8, 89.)  Tokio Marine has refused to reimburse Lexington for the settlement amount that Lexington paid.  (Compl. ¶¶ 93-96.)  Lexington also paid for expenses in connection with the Port Authority Litigation and negotiation of the settlement agreement with Port Authority for which Tokio Marine has not reimbursed Lexington. (Compl. ¶¶ 139-44.)

Lexington alleged that equity and good conscience require that Tokio Marine reimburse Lexington for its settlement with Port Authority.  (Compl. ¶ 8.)  It was always intended and agreed that Tokio Marine would ultimately pay for all covered or partially covered losses under the Lexington First-Layer and Second-Layer Coverage.  (Compl. ¶ 135.)  Lexington alleged that as a matter of fairness and equity, Tokio Marine should reimburse Lexington.  (Compl. ¶ 8.)

<u>CONCLUSION</u>

At this early stage in the litigation, it would be inappropriate to dismiss Lexington's alternative claim for unjust enrichment.  This Court should deny Tokio Marine's motion to dismiss Lexington's claim for unjust enrichment until it is clear that the terms of the reinsurance agreement as alleged are valid and enforceable and that Lexington's settlement with its insured is governed by the terms of the reinsurance agreements.

Dated: March 10, 2011

Respectfully submitted,

<u>    /s/ Paul R. Koepff                         </u>
Paul R. Koepff
Sarah B. Hargrove

O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036
Tel: (212) 326-2000
Fax: (212) 326-2061
Email: pkoepff@omm.com

*Attorneys for Plaintiff Lexington*
    *Insurance Company*

NY1:1838443.13