**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X
LEXINGTON INSURANCE COMPANY,   :
   :
        *Plaintiff*,   :
   :
   v.   :
   :   11 cv 0391 (DAB)
TOKIO MARINE & NICHIDO FIRE   :
INSURANCE COMPANY LIMITED,   :
as successor to NICHIDO FIRE & MARINE   :
INSURANCE COMPANY LIMITED   :
   :
        *Defendant*.   :
-----------------------------------------------------------------X

## DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE FOURTH CAUSE OF ACTION IN PLAINTIFF'S COMPLAINT

David M. Spector, Esq.      Brian J. Neff, Esq.
Antony S. Burt, Esq.      SCHIFF HARDIN LLP
Amy M. Rubenstein, Esq.      900 Third Avenue
SCHIFF HARDIN LLP      23rd Floor
233 South Wacker Drive      New York, New York 10022
Chicago, Illinois 60606      Tel: (212) 753-5000
Tel: (312) 258-5500

*Attorneys for Defendant*

Defendant, Tokio Marine & Nichido Fire Insurance Company Limited, as successor to Nichido Fire & Marine Insurance Company Limited ("Tokio Marine"), respectfully submits this reply memorandum of law in support of its Federal Rule of Civil Procedure 12(b)(6) motion to dismiss Count Four of the Complaint of Lexington Insurance Company ("Lexington").

## <u>INTRODUCTION</u>

Lexington brought a five-count Complaint against Tokio Marine to recover sums allegedly owed under reinsurance agreements that Lexington entered into with Nichido Fire & Marine Insurance Company Limited ("Nichido") ("Reinsurance Agreements"). The Reinsurance Agreements at issue covered two excess insurance policies that Lexington issued to the Port Authority of New York and New Jersey ("Port Authority). (Compl. ¶¶ 40, 43; Exhibits E and F.) But before any Port Authority claim could reach Lexington's excess insurance policies, the Port Authority had a $10 million primary insurance policy with American Home Insurance Co. ("American Home"). (Compl. ¶¶ 24, 26.) Unlike Lexington, American Home had no reinsurance for its primary policy with the Port Authority.

When a dispute arose among the Port Authority, American Home and Lexington regarding insurance coverage under the primary and excess insurance policies, the two companies owned by American International Group ("AIG") — American Home and Lexington — banded together to settle in a way that maximized their reinsurance coverage. (Compl. ¶ 83.) The AIG companies (Lexington and American Home) agreed to pay the Port Authority $11 million and allocated $7.4 million of that settlement to the reinsured excess layers. (Compl. ¶ 89.) Although a primary layer typically must be exhausted before an excess layer may be triggered, Lexington and American Home ignored the primary policy's $10 million limit and jumped right up into the excess layers. When Lexington sought reinsurance for its $7.4 million

portion of the settlement, Tokio Marine declined the claim because, among other reasons, Lexington did not allocate the settlement in good faith.  (Compl. ¶ 95.)

After Tokio Marine declined the reinsurance claim, Lexington filed this five-count Complaint against Tokio Marine, which is essentially a $7.4 million breach of contract claim related to the Reinsurance Agreements.  (Compl. ¶¶ 1, 6.)  But in addition to its breach of contract claim (Count Three), Lexington's Complaint improperly seeks the exact same relief under a count for unjust enrichment (Count Four).  (Compl. ¶¶ 127-37.)  Lexington has failed to properly plead Counts Three and Four in the alternative and expressly realleged its breach of contract claim in its unjust enrichment claim.  (Compl. ¶ 130.)

Lexington's unjust enrichment claim should be dismissed because the parties' valid, enforceable Reinsurance Agreements govern this dispute.  Neither party has alleged that the Reinsurance Agreements — under which Tokio Marine has already paid Lexington $21 million — are invalid or unenforceable.  (Compl. ¶ 67.)  Instead, the only dispute is whether they require Tokio Marine to pay Lexington's reinsurance claims in this instance.  Because the Reinsurance Agreements govern the dispute between the parties, Lexington cannot maintain a separate unjust enrichment claim.

## ARGUMENT

Lexington essentially makes two arguments in its lengthy Opposition to Tokio Marine's Motion, neither of which is correct.[1]  First, Lexington contends that it can plead unjust enrichment in the alternative to its breach of contract claim.  But Lexington's own case law underscores that a plaintiff may plead these claims in the alternative only where there is a

---

[1] Lexington also reads Tokio Marine's Motion as arguing that Lexington failed to properly plead the elements of an unjust enrichment claim.  (Opp. at 17-19.)  Tokio Marine did not argue this point and therefore will not reply to it.

question as to whether the contract governs the dispute.  Here there is no such question.  The only question is whether Lexington is entitled to payment under the Reinsurance Agreements. (Compl. ¶¶ 1, 6.)

Lexington next argues that because Tokio Marine disputes the interpretation of two "key terms" of the Reinsurance Agreements, Lexington can plead unjust enrichment in the alternative. (Opp. at 1-2, 12-13.)   Whether Tokio Marine disputes Lexington's interpretation of the Reinsurance Agreements' terms, however, is not dispositive:  that is, even when parties disagree regarding a contract's interpretation, an unjust enrichment claim cannot stand if an undisputed contract exists between the parties.  Because the undisputed Reinsurance Agreements govern Lexington's claim, the unjust enrichment claim should be dismissed.

## I.   LEXINGTON'S UNJUST ENRICHMENT COUNT FAILS BECAUSE VALID, <u>ENFORCEABLE CONTRACTS GOVERN THIS DISPUTE</u>

A party cannot generally maintain an unjust enrichment claim where it has an adequate remedy at law under a contract.  As this Court has explained:

> Under New York law, the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.

*Crowley v. Visionmaker, LLC*, 512 F. Supp. 2d 144, 153-154 (S.D.N.Y. 2007) (Batts, D.J.) (quotations and citations omitted) (granting Rule 12(b)(6) motion for unjust enrichment claim because "there is a valid, enforceable agreement"); *see also Foxley v. Sotheby's Inc.*, 893 F. Supp. 1224, 1234 (S.D.N.Y. 1995) (granting Rule 12(b)(6) motion for unjust enrichment claim). Indeed, "[i]t is impermissible ... to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and *the scope of which clearly covers the dispute between the parties*."  *Clark-*

*Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.S.2d 382, 389 (1987) (citations omitted) (emphasis added).

### A. Alternative Pleading Requires a *Bona Fide* Dispute as to the Reinsurance Agreements' Validity

An exception to this general rule exists, allowing alternative pleading, only when the plaintiff can demonstrate a *bona fide* dispute as to the existence of a valid agreement. *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 195-96 (S.D.N.Y. 2009) (dismissing unjust enrichment claim where plaintiff failed to allege the contract was invalid or unenforceable); *CBS Broadcasting, Inc. v. Jones*, 460 F. Supp. 2d 500, 506 (S.D.N.Y. 2006) (Chin, D.J.) (emphasis added) (granting motion to dismiss unjust enrichment claim because "plaintiff's alternative pleading argument fails [where] the validity of the contract is not at issue"); *Waxman v. Envipco Pick Up & Processing Servs., Inc.*, No. 02 Civ. 10132 (GEL), 2003 WL 22439796, at *11 (S.D.N.Y. Oct. 28, 2003) (dismissing unjust enrichment claim where there was no dispute as to the existence of the contract); *New Paradigm Software Corp. v. New Era of Networks, Inc.*, 107 F. Supp. 2d 325, 329 (S.D.N.Y. 2000) (dismissing unjust enrichment claim and holding that alternative pleading only allowed in cases where "the existence of the contracts upon which plaintiffs based their claims was at least partially disputed").[2]

Lexington cites to cases where plaintiffs have "properly pleaded" alternative causes of action. (Opp. at 10-13.)  But none of those opinions supports alternative pleading where a valid and enforceable contract governs the dispute. *See, e.g., Larson v. Eney*, No. 08 Civ. 3515 (DC),

---

[2] Lexington devotes the majority of its Opposition to distinguishing the case law that Tokio Marine cited in its Motion. (Opp. at 13-16.)  But Lexington simply points out that in each case there is a valid and enforceable contract, and therefore the courts dismissed the unjust enrichment claims. (Opp. at 13-16.)  That is precisely the situation before this Court, which is why each case cited by Tokio Marine is squarely on point.

2009 WL 321256, at *2 (S.D.N.Y. Feb. 10, 2009) (Chin, D.J.) (alternative pleading allowed because the parties disputed the validity and existence of the contract); *MacPhee v. Verizon Commc'ns Inc.*, No. 06-CV-7870 (BSJ), 2008 WL 162899 (S.D.N.Y. Jan. 15. 2008) (allowing alternative pleading because the defendant argued that "no oral promise was made"); *Las Olas Investor Group, LLC v. Las Olas Tower Co. Inc.*, No. 06 Civ. 7781, 2008 WL 80741, at *2 (S.D.N.Y. Jan. 2, 2008) (allowing plaintiff to plead in the alternative where defendant disputed validity of relevant agreement); *Consolidated Risk Servs., Inc. v. Auto. Dealers WC Self Ins. Trust*, No. 1:06-CV-871, 2007 WL 951565, at *7 (N.D.N.Y. March 27, 2007) (allowing plaintiff to plead unjust enrichment in alternative to breach of contract claim because plaintiff also alleged breach of extra-contractual duties).  Thus, to plead in the alternative, Lexington must show that Tokio Marine disputes the validity of the Reinsurance Agreements.  Having already paid $21 million under the Reinsurance Agreements, it does not.  (Compl. ¶ 67.)

**B.    There Is No Dispute as to the Validity of the Reinsurance Agreements that Govern Lexington's Claims**

Lexington never alleged in its Complaint that there is *any* dispute as to the existence, validity or enforceability of the Reinsurance Agreements.  Rather, Lexington alleged that the Reinsurance Agreements are valid and that Tokio Marine breached them.  (Compl. ¶¶ 40, 43, 128-29; Exhibits E and F.)  And Tokio Marine likewise has not challenged the existence, validity or enforceability of the Reinsurance Agreements (or of any term in the Reinsurance Agreements).  Rather, Tokio Marine's position is that Lexington cannot collect under those Reinsurance Agreements.

To be sure, as is the case in most contractual disputes, Lexington and Tokio Marine disagree regarding the interpretation of the Reinsurance Agreements.  Yet Lexington claims that the parties' disputes relating to the interpretation of two "key terms" of the Reinsurance

Agreements allow its alternative unjust enrichment claim. (Opp. at 1-2, 12-13.) Lexington is incorrect because a dispute over the interpretation of the terms of an admittedly valid contract does not justify a separate unjust enrichment claim. *Gunther v. Capital One, N.A.*, 703 F. Supp. 2d 264, 276 (E.D.N.Y. 2010) (dismissing unjust enrichment count and noting that such claims "will not survive a motion to dismiss when an undisputed contract exists between the parties . . . even though the parties dispute the interpretation of the controlling contract") (citations omitted).

First, Lexington claims that the follow the fortunes "doctrine," as it interprets that "doctrine," must be considered as a contractual term on the basis of industry "custom and practice." (Compl. ¶¶ 101-04.) Tokio Marine disagrees that the Reinsurance Agreements support the application and scope of the follow the fortunes "doctrine" that Lexington has advanced. (Answer ¶¶ 101-04.) The parties' disagreement regarding the interpretation and application of the follow the fortunes "doctrine" to their admittedly valid contracts cannot justify Lexington's unjust enrichment claim. *Gunther*, 703 F. Supp. 2d at 276.

Second, Lexington claims that there is a dispute over the interpretation of the limits of liability provisions in the Reinsurance Agreements. The parties agree that American Home's primary policy had a $10 million per occurrence coverage limit, and that Lexington's first excess policy "provided an $11.5 million part of $40 million per occurrence excess of $10 million per occurrence." (Compl. ¶¶ 24, 26; Answer ¶¶ 24, 26.) But Tokio Marine contends that Lexington's failure to allocate the first $10 million of the settlement to the primary policy is a significant indication of Lexington's bad faith. (Answer, Add'l Defenses ¶¶ 24-31.) Lexington disagrees. (Compl. ¶¶ 4-5.) Again, this is a classic dispute regarding contract interpretation, not contract validity, and therefore it does not save Lexington's unjust enrichment claim from dismissal. *Gunther*, 703 F. Supp. 2d at 276.

## II.   LEXINGTON DID NOT PROPERLY PLEAD IN THE ALTERNATIVE

Even if Lexington could demonstrate a question as to the validity or enforceability of the Reinsurance Agreements, it did not properly plead its unjust enrichment claim.  Lexington's unjust enrichment claim expressly "repeats and realleges" its breach of contract claim and related allegations "as if fully set forth herein."  (Compl. ¶ 130.)  Where a plaintiff pleads unjust enrichment and breach of contract claims in this manner, the unjust enrichment claim must be dismissed:

> [The] unjust enrichment claim [is] internally inconsistent in that [the unjust enrichment claim] incorporates by reference the allegations comprising [the] breach of contract claim, and that claim alleges the existence of enforceable writings which govern plaintiff's right to receive compensation.

*See Firtell v. Update, Inc.*, 851 N.Y.S.2d 57, fn.5 (Sup. Ct. 2007) (dismissing *quantum meruit* and unjust enrichment counts where plaintiff incorporated allegations regarding a valid contract) (citation omitted); *see also Cole-Haddon, Ltd. v. Drew Phillips Corp.*, 454 F. Supp. 2d 772, 777 (N.D. Ill. 2006) (noting that Rule 8 allows pleading in the alternative, but dismissing equitable claims because plaintiff incorporated allegations regarding binding contract); *Homestead Ins. Co. v. Chicago Transit Auth.*, No. 96 C 4570, 1997 WL 43232, at *4 (N.D. Ill. Jan. 23, 1997) (dismissing unjust enrichment claim because the complaint did not properly plead the claims in the alternative where "[t]he unjust enrichment claim ... adopts by reference all the allegations in the contract claim ... including paragraphs alleging an express contract between the parties"). Because Lexington's unjust enrichment claim suffers from this internal inconsistency, it should be dismissed.

## **CONCLUSION**

For these reasons, Tokio Marine respectfully requests that this Court dismiss Count Four of the Complaint with prejudice for failure to state a claim upon which relief may be granted.


DATED:          March 21, 2011                    SCHIFF HARDIN LLP

        Brian J. Neff, Esq.                By:      /s/ Brian J. Neff
        SCHIFF HARDIN LLP                          David M. Spector, Esq.
        900 Third Avenue                           Antony S. Burt, Esq.
        23rd Floor                                 Amy M. Rubenstein, Esq.
        New York, New York 10022                   SCHIFF HARDIN LLP
        Tel: (212) 753-5000                        233 S. Wacker Drive
        Fax: (212) 753-5044                        Chicago, Illinois 60606
                                                   Tel: (312) 258-5500
        ATTORNEYS FOR TOKIO MARINE &               Fax: (312) 258-5600
        NICHIDO FIRE INSURANCE COMPANY
        LIMITED


CH2\9741092