UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY,<br><br>          Plaintiff,<br><br>    -against-<br><br>TOKIO MARINE & NICHIDO FIRE INSURANCE COMPANY LIMITED, as successor to NICHIDO FIRE & MARINE INSURANCE COMPANY LIMITED,<br><br>       Defendant. | Civil Action No. 11-0391 (DAB) |

MEMORANDUM OF LAW IN SUPPORT OF LEXINGTON'S MOTION FOR JUDGMENT
ON THE PLEADINGS WITH RESPECT TO ITS FIRST CAUSE OF ACTION

Andrew S. Amer, Esq.
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
(212) 455-2000 (telephone)
(212) 455-2502 (facsimile)

*Attorneys for Plaintiff Lexington
Insurance Company*

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................1

THE RELEVANT UNCONTESTED ALLEGATIONS.........................................3

     A.    The Underlying Insurance.................................................... 3

     B.    The Reinsurance Provided By Tokio Marine ........................... 4

     C.    The World Trade Center Property Loss.................................... 5

     D.    The Port Authority's Insurance Claim...................................... 5

     E.    The Coverage Settlement........................................................ 6

     F.    Lexington's Reinsurance Claim................................................ 7

ARGUMENT ...........................................................................................................8

   I.    LEXINGTON IS ENTITLED TO JUDGMENT ON ITS FIRST
        CAUSE OF ACTION DECLARING THAT ITS COVERAGE
        OBLIGATION IS NOT CONTINGENT UPON EXHAUSTION OF
        THE UNDERLYING PRIMARY LIMIT ............................................... 8

     A.    It is Well Settled In This Circuit That Exhaustion Of
          Underlying Policy Limits Is Not Necessary To Trigger An
          Excess Insurer's Coverage Obligation........................................ 9

     B.    In Any Event, Port Authority's Release Of Its Claim Against
          American Home In Settlement Exhausts The AH Policy Limit
          For Purposes Of Triggering Lexington's Obligations ............................ 13

CONCLUSION.........................................................................................................14

TABLE OF AUTHORITIES

**Cases**

*Am. Commercial Lines LLC v. Water Quality Ins. Syndicate*, No. 09 Civ. 7957 (LAK), 2010 WL 1379763 (S.D.N.Y. Mar. 29, 2010) ................................................................ 8

*Apionishev v. Columbia Univ.*, No. 09 Civ. 6471 (SAS), 2011 WL 1197637 (S.D.N.Y. Mar. 25, 2011) .............................................................................................................. 8, 9

*Burns Int'l Sec. Servs., Inc. v. Int'l Union*, 47 F.3d 14 (2d Cir. 1995) ............................ 8

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ....................................... 9

*Christiania General Ins. Corp. of N.Y. v. Great Am. Ins. Co.*, 979 F.2d 268 (2d Cir. 1992) ................................................................................................................................ 2, 11

*Continental Ins. Co. v. Northern Indiana Pub. Serv. Co.*, Nos. 2:05-cv-156, 2:05-cv-210, 2011 WL 1322530 (N.D. Ind. Apr. 5, 2011) ........................................................ 11

*Hayden v. Paterson*, 594 F.3d 150 (2d Cir. 2010) ......................................................... 8

*Koppers Co. v. Aetna Casualty & Surety Co.*, 98 F.3d 1440 (3d Cir. 1996) ................. 11

*Kramer v. Time Warner, Inc.*, 937 F.2d 767 (2d Cir. 1991) .......................................... 9

*Lightfoot v. Hartford Fire Ins. Co.*, No. 07-4833, 2011 WL 197982 (E.D. La. Jan. 20, 2011) ............................................................................................................................. 14

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. American Re-Ins. Co.*, 441 F. Supp. 2d 646 (S.D.N.Y. 2006) ................................................................................................ 1

*Pacific Employers Ins. Co v. Clean Harbors Envtl. Servs. Inc.*, No. 08 C 2180, 2011 WL 813925 (N.D. Ill. Feb. 24, 2011) ........................................................................... 14

*Pereira v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 04 Civ. 1134 (LTS), 2006 WL 1982789 (S.D.N.Y. July 12, 2006) .................................................................... 2, 11, 14

*Safeco Ins. Co. of Am. v. Discovery Prop. & Cas. Ins. Co.*, No. 05 Civ. 8625 (DC), 2009 WL 436329 (S.D.N.Y. Feb. 23, 2009) ............................................................... 11

*Sheppard v. Beerman*, 18 F.3d 147 (2d Cir. 1994) ....................................................... 8

*Stargatt v. Fidelity & Cas. Co. of N.Y.*, 67 F.R.D. 689 (D. Del. 1975), *aff'd* 578 F.2d 1375 (3d Cir. 1978) ...................................................................................................... 14

*Stonewall Ins. Co. v. Superior Court*, No. B223251, 2010 WL 4277559 (Cal. Ct. App. 2d Nov. 1, 2010) ........................................................................................................... 12

*Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653 (7th Cir. 2010) ..................... 14

*UNR Indus. Inc., v. Continental Cas. Co.*, 942 F.2d 1101 (7th Cir. 1991) ................... 11

*Zeig v. Massachusetts Bonding & Insurance Co.*, 23 F.2d 665 (2d Cir. 1928) ............. passim

*Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309 (1994) .................... 11

**Statutes**

28 U.S.C. § 2201(a) ..................................................................................................... 9

**Rules**

Federal Rule of Civil Procedure 12(c) ...................................................................... 8

**Other Authorities**

Ostrager & Newman, Handbook on Insurance Coverage Disputes § 13.04 (15th ed. 2009) ........................................................................................................................ 11

Plaintiff Lexington Insurance Company ("Lexington") respectfully submits this memorandum of law in support of its motion for judgment on the pleadings with respect to its First Cause of Action pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This action arises out of the refusal of defendant Tokio Marine & Nichido Fire Insurance Company Limited ("Tokio Marine") to pay Lexington's reinsurance claim for property losses arising out of the September 11, 2001 terrorist attacks that destroyed the North and South Towers of the World Trade Center. Tokio Marine reinsures 100% of the risk assumed by Lexington under two excess first-party property policies issued to The Port Authority of New York and New Jersey ("Port Authority") in effect from June 2001 to June 2002 covering the World Trade Center and various other buildings owned by Port Authority in the vicinity of the World Trade Center.[1] The Lexington excess policies provide coverage to Port Authority in the total amount of $21 million per occurrence, excess of a $10 million per occurrence primary policy issued by American Home Assurance Company ("American Home").

Following the total destruction of the World Trade Center towers and damage to other Port Authority buildings at or near the World Trade Center on September 11, 2001, Port Authority sought coverage from its first-party property insurers, including American Home and Lexington. Lexington, along with the other property insurers, agreed that Port Authority was entitled to coverage in the amount of one occurrence limit under each applicable policy and paid accordingly. (Tokio Marine, in turn, paid in full Lexington's reinsurance claim based upon this one occurrence loss.) Port Authority maintained, however, that the terrorist attacks constituted two occurrences and sought payment from the property insurers of a second per-occurrence limit.

---

[1]     Reinsurance is a contractual arrangement whereby one insurer transfers all or a portion of the risk it underwrites pursuant to a policy or group of policies to another insurer. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. American Re-Ins. Co.*, 441 F. Supp. 2d 646, 650 (S.D.N.Y. 2006).

Ultimately, American Home and Lexington settled this "second occurrence" coverage dispute with Port Authority by agreeing to pay a total of $11 million, which was significantly less than their combined per-occurrence limits of $31 million. Port Authority, American Home and Lexington agreed to allocate the $11 million settlement pro rata among the American Home and Lexington policies, with approximately $3.6 million allocated to American Home's primary policy and $7.4 million allocated to Lexington's excess policies.

When Lexington submitted its reinsurance claim to Tokio Marine for $7.4 million, Tokio Marine denied the claim contending that Lexington's coverage obligation was not triggered unless and until the $10 million per occurrence limit of the American Home policy was exhausted. Tokio Marine contends that $10 million of the $11 million settlement should have been allocated to the American Home policy to exhaust that policy's per occurrence limit, leaving only $1 million allocated to the Lexington coverage reinsured by Tokio Marine.

In its First Cause of Action, Lexington asserts that Tokio Marine's position is incorrect as a matter of law and that Lexington's coverage obligations are not contingent upon exhaustion of the American Home policy. Lexington is entitled to judgment on its First Cause of Action because under well-settled law in this Circuit, an insured is entitled to coverage from an excess insurer even though the insured has not received payment from the primary insurer sufficient to exhaust the underlying primary limit, so long as the amount of the loss itself exceeds the excess policy attachment point. *Zeig v. Massachusetts Bonding & Insurance Co.*, 23 F.2d 665, 666 (2d Cir. 1928); *Christiania General Ins. Corp. of N.Y. v. Great Am. Ins. Co.*, 979 F.2d 268, 278 (2d Cir. 1992); *Pereira v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 04 Civ. 1134 (LTS), 2006 WL 1982789, at *7 (S.D.N.Y. July 12, 2006).

Moreover, this is true even where, unlike here, the excess policy expressly provides that it shall apply only after the underlying insurance is exhausted by payment of claims

2

up to the full amount of the underlying limits.  In addressing such language, the Second Circuit has squarely held that the insured's release of its claim against the underlying insurer in settlement, even where the settlement amount actually paid is less than the policy limit, exhausts the underlying policy limit for purposes of triggering the excess insurer's obligation. *Zeig*, 23 F.2d at 666.

Based on *Zeig* and its progeny, Lexington is entitled to a declaration as a matter of law that Lexington's coverage obligations are not contingent upon exhaustion of the per-occurrence limit of the underlying American Home policy, or in the alternative, that Port Authority's release of all claims for coverage under the American Home policy constituted exhaustion of the per-occurrence limit of the American Home policy, even though American Home paid only $3.6 million of its $10 million per-occurrence limit, for purposes of triggering Lexington's obligations under its excess policies reinsured by Tokio Marine.

## THE RELEVANT UNCONTESTED ALLEGATIONS

In this action, Lexington seeks reimbursement from its reinsurer, Tokio Marine, for amounts that Lexington paid to its policyholder, Port Authority, to settle a coverage dispute regarding a property loss arising out of the destruction of the World Trade Center on September 11, 2001.  (Compl. ¶¶ 1-6.)[2]  The pleadings relevant to Lexington's First Cause of Action are set forth below.

## A.     The Underlying Insurance

American Home provided the primary layer of property insurance to Port Authority under Policy No. 4547986, effective June 1, 2001 to June 1, 2002 (the "AH Policy").

---

[2]     All references herein to "(Compl. ¶ __ )" or "(Compl. Exh. __ )" refer to the Complaint and exhibits thereto, filed January 19, 2011 [Docket No. 1].

3

(Answer ¶ 22.)[3]  The AH Policy has a $10 million per-occurrence limit of liability covering "direct physical loss of or damage to" the insured property.  (Answer ¶¶ 24, 25.)

Lexington provided first layer excess coverage to Port Authority for certain property and other damage under Binder No. 8750308, effective June 1, 2001 to June 1, 2002 (the "First Excess Binder").  (Answer ¶ 26.)  The First Excess Binder provides coverage in the amount of $11.5 million part of $40 million per occurrence, excess of $10 million per occurrence. (Answer ¶ 26.)

Lexington also provided a second layer of excess coverage to Port Authority for certain property and other damage under Binder No. 8750309, effective June 1, 2001 to June 1, 2002 (the "Second Excess Binder").  (Answer ¶ 32.)  The Second Excess Binder provides coverage in the amount of $9.5 million part of $50 million per occurrence, excess of $50 million per occurrence.  (Answer ¶ 32.)

**B.    The Reinsurance Provided By Tokio Marine**

The Lexington excess coverage was 100% reinsured by Nichido Fire & Marine Insurance Company Limited ("Nichido Fire"), which was later merged into Tokio Marine as detailed below.

In June 2001, Nichido Fire sent to Port Authority's insurance broker by facsimile a reinsurance binder and advised that Lexington was fronting for Nichido Fire.  (Answer ¶¶ 38, 39.)  In August 2001, a Nichido Fire representative signed two memoranda of facultative reinsurance: (i) Memorandum of Facultative Reinsurance Agreement No. 825 covering the First Excess Binder ("First Layer Reinsurance Agreement"); and (ii) Memorandum of Facultative Reinsurance Agreement No. 824 covering the Second Excess Binder ("Second Layer Reinsurance Agreement") (collectively, the "Reinsurance Agreements").  (Answer ¶¶ 40, 43.)

---

[3]      All references herein to "(Answer ¶ __ )" refer to Defendant's Answer to Complaint, filed February 10, 2011 [Docket No. 7].

The First Layer Reinsurance Agreement provides Lexington with reinsurance coverage for 100% of all risks insured under the First Excess Binder.  (Answer ¶ 41.)   The Second Layer Reinsurance Agreement provides Lexington with reinsurance coverage for 100% of all risks insured under the Second Excess Binder.  (Answer ¶ 44.)

Tokio Marine succeeded to all the rights, obligations and liabilities of Nichido Fire under the Reinsurance Agreements.  (Answer ¶ 15.)

## C.    The World Trade Center Property Loss

On September 11, 2001, an American Airlines jet, which had departed from New York's JFK International Airport, was hijacked and flown into the North Tower of the World Trade Center at approximately 8:46 a.m.  (Answer ¶ 48.)  On the same day, a United Airlines jet, which had departed from Boston's Logan International Airport, was hijacked and flown into the South Tower of the World Trade Center at approximately 9:03 a.m.  (Answer ¶ 49.)  After burning for more than one hour, the North Tower and South Tower collapsed from the heat and other damage caused by the jets.  (Answer ¶¶ 50, 51.)  In addition to the loss of the two towers, other buildings in the area sustained substantial property damage as a result of the September 11 attacks, including the PATH station and various other Port Authority buildings at or near the World Trade Center site.  (Answer ¶ 53.)

## D.    The Port Authority's Insurance Claim

After the September 11 attacks, Port Authority submitted an insurance claim to American Home, Lexington and its other first-party property insurers seeking to recover for the loss it had sustained as a result of the destruction of the North and South Towers and damage to other Port Authority buildings at or near the World Trade Center site.  (Answer ¶ 62.)  Because they did not dispute that there was at least one occurrence, American Home, Lexington and the other first-party property insurers paid one per-occurrence limit with respect to the covered

property and other damage suffered by Port Authority as a result of the September 11 attacks. (Answer ¶ 63.)  Accordingly, American Home paid $10 million under the AH Policy and Lexington paid $11.5 million under the First Excess Binder and $9.5 million under the Second Excess Binder.  (Answer ¶¶ 64-66.)

In turn, Lexington submitted to Tokio Marine reinsurance claims under the First Layer Reinsurance Agreement seeking 100% recovery for its payment of $11.5 million under the First Excess Binder and under the Second Layer Reinsurance Agreement seeking 100% recovery for its payment of $9.5 million under the Second Excess Binder, both of which Tokio Marine paid in full.  (Answer ¶ 67.)

After receiving payment of one per-occurrence limit from American Home, Lexington and the other first-party property insurers, Port Authority continued to pursue additional coverage from these insurers based on its contention that the September 11 attacks constituted two occurrences, and therefore required the insurers to pay a second per-occurrence limit.  (Answer ¶ 68.)  The first-party property insurers, including Lexington, disputed Port Authority's contention that there was a second occurrence and that they owed any additional coverage beyond the one per-occurrence limit they had already paid.  (Answer ¶ 69.)

E.     The Coverage Settlement

When the dispute between Port Authority and its first-party property insurers over the number of occurrences could not be resolved, certain of the insurers initiated an action against Port Authority seeking declarations resolving the coverage dispute (the "Port Authority Litigation").  (Answer ¶ 73.)  Both American Home and Lexington were parties to the Port Authority Litigation.  (Answer ¶ 73.)

American Home and Lexington entered into a settlement agreement in June 2010 with Port Authority to resolve their claims in the Port Authority Litigation in exchange for a total

payment by American Home and Lexington of $11 million.  (Answer ¶¶ 83, 89.)  This settlement payment was approximately 35% of the per-occurrence limits under the AH Policy, First Excess Binder and Second Excess Binder, the per-occurrence limits of which total $31 million.  (Answer ¶¶ 24-26, 32.)  As part of the settlement agreement, Port Authority, American Home and Lexington agreed to allocate the $11 million settlement payment among the AH Policy, the First Excess Binder and the Second Excess Binder pro-rata based on the ratio of each policy's per-occurrence limit to the total per-occurrence limits for all three policies of $31 million.  (Answer ¶¶ 87, 89.)  Accordingly, they allocated a 10/31 share (or 32.26%) of the $11 million to the AH Policy ($3,548,387.10), a 11.5/31 share (or 37.10%) of the $11 million to the First Excess Binder ($4,080,645.16), and a 9.5/31 share (or 30.65%) of the $11 million to the Second Excess Binder ($3,370,967.74).  (Answer ¶¶ 87, 89.)  In exchange for these payments, Port Authority forever released all claims against American Home and Lexington under the AH Policy and the First and Second Excess Binders.  (Answer ¶ 89.)

**F.     Lexington's Reinsurance Claim**

On April 21, 2010, Lexington advised Tokio Marine that Lexington had reached a settlement with Port Authority and that the settlement amount of $11 million had been pro-rated among the AH Policy, the First Excess Binder and the Second Excess Binder based on policy limits.  (Answer ¶ 91.)  On July 2, 2010, Lexington submitted a reinsurance claim to Tokio Marine for $4,080,645.16 under the First Layer Reinsurance Agreement and $3,370,967.74 under the Second Layer Reinsurance Agreement arising out of Lexington's allocated payments under the settlement.  (Answer ¶ 93.)

Tokio Marine has taken the position that $10 million of the $11 million settlement amount should have been allocated to the AH Policy to exhaust the $10 million per-occurrence limit of the AH Policy and that Tokio Marine would therefore reimburse Lexington under the

7

First Layer Reinsurance Agreement only for the remaining $1 million in loss that it contends should have been allocated to the First Excess Binder after exhaustion of the AH Policy limit. (Answer ¶ 92.)

Tokio Marine's refusal to pay Lexington's reinsurance claim in full and insistence that the AH Policy limit first be exhausted before Lexington's coverage obligation is triggered has required Lexington to commence this suit.  Relevant to this motion is Lexington's First Cause of Action, which seeks a declaration that Lexington's obligation to provide coverage to Port Authority under the First Excess Binder and Second Excess Binder is not contingent upon exhaustion of the limits of the AH Policy.  (Compl. ¶¶ 105-10.)  For the reasons set forth below, there is no basis for Tokio Marine's position as a matter of law.

## ARGUMENT

I.   **LEXINGTON IS ENTITLED TO JUDGMENT ON ITS FIRST CAUSE OF ACTION DECLARING THAT ITS COVERAGE OBLIGATION IS NOT CONTINGENT UPON EXHAUSTION OF THE UNDERLYING PRIMARY LIMIT**

Judgment pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is appropriate if, based on the pleadings, there exist no issues of material fact and the moving party is entitled to judgment as a matter of law.  *See Burns Int'l Sec. Servs., Inc. v. Int'l Union*, 47 F.3d 14, 16 (2d Cir. 1995); *Apionishev v. Columbia Univ.*, No. 09 Civ. 6471 (SAS), 2011 WL 1197637, at *2 (S.D.N.Y. Mar. 25, 2011).  A Rule 12(c) motion is evaluated by the same standards applicable to dismissals pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See, e.g., Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  As such, the Court will view the pleadings and draw all reasonable inferences in favor of the non-moving party.  *Id.*; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994); *Am. Commercial Lines LLC v. Water Quality Ins. Syndicate*, No. 09 Civ. 7957 (LAK), 2010 WL 1379763, at *2 (S.D.N.Y. Mar. 29, 2010).  In evaluating a Rule 12(c) motion for judgment on the pleadings, the Court may consider the

pleadings, documents attached to or incorporated by reference into the pleadings, as well as a document not incorporated by reference when the pleadings "[rely] heavily upon its terms and effect." *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *Apionishev*, 2011 WL 1197637, at *3 (citing *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). The Court may also consider matters of which judicial notice may be taken. *Apionishev*, 2011 WL 1197637, at *3.

An "actual controversy" exists between Lexington and Tokio Marine as to whether the limits of the underlying AH Policy needed to be exhausted before Lexington's obligation to provide excess coverage is triggered, and as a result, whether Tokio Marine may assert as a defense to Lexington's reinsurance claim that Lexington was under no obligation to pay Port Authority unless and until the full per-occurrence limit of the AH Policy was paid. (Answer ¶¶ 107, 109-10.) Where, as here, there is an "actual controversy" between the parties, this Court is empowered by the Federal Declaratory Judgment Act to issue a declaration as to the rights of the party seeking the declaration. 28 U.S.C. § 2201(a).

## A.    It is Well Settled In This Circuit That Exhaustion Of Underlying Policy Limits Is Not Necessary To Trigger An Excess Insurer's Coverage Obligation

Under the settlement agreement with Port Authority, American Home paid approximately $3.6 million under the AH Policy and Lexington paid approximately $7.4 million under its First and Second Excess Binders.  Tokio Marine contends that: (i) Lexington's coverage obligation is not triggered until the per-occurrence limit of the AH Policy is exhausted; (ii) American Home's payment fell $6.4 million short of exhausting the $10 million per-occurrence limit of the AH Policy; and (iii) after applying $6.4 million of the $7.4 million payment by Lexington to exhaust the AH Policy, Lexington's coverage obligation under the excess policies was only $1 million.   Tokio Marine's position raises a pure question of contract interpretation: is Lexington's obligation to provide coverage under the First and Second Excess

Binders contingent upon exhaustion of the AH Policy? The answer to that question is clearly "no" as a matter of law.

In the landmark case of *Zeig v. Massachusetts Bonding & Insurance Co.*, 23 F.2d 665 (2d Cir. 1928), the Second Circuit squarely held that an insured was entitled to recover from its excess insurer for a loss that was greater than the limits of the primary policy even though the insured had not exhausted the primary policy. *Id.* at 666. In *Zeig*, the plaintiff insured had three primary policies of burglary insurance providing total limits of $15,000 and an excess policy of burglary insurance issued by the defendant with a limit of $5,000. *Id.* at 665. The plaintiff settled claims arising from a loss under the primary policies for a total payment of $6,000 and then sought excess coverage from the defendant. *Id.* The trial court held that the primary policies had not been exhausted by payment in the full amount of the primary limits and dismissed the complaint. *Id.*

On appeal, the Second Circuit (A. Hand, J.) reversed. The *Zeig* court rejected the defendant's argument (identical to Tokio Marine's position here) that it was necessary for the insured to collect the full amount of the primary policies in order to exhaust the underlying limits before triggering the excess insurer's obligation, noting that the excess insurer "had no rational interest in whether the insured collected the full amount of the primary policies, so long as it was only called upon to pay such portion of the loss as was in excess of the limits of those policies." *Id.* at 666. The Second Circuit explained the important policy reasons underlying its decision:

> To require an absolute collection of the primary insurance to its full limit would in many, if not most, cases involve delay, promote litigation, and prevent an adjustment of disputes which is both convenient and commendable. A result harmful to the insured, and of no rational advantage to the insurer, ought only be reached when the terms of the contract demand it.
>
> We can see no reason for a construction so burdensome to the insured.

10

*Id.* at 666.

   *Zeig* remains the seminal decision interpreting New York law in this Circuit and

has been widely followed in other jurisdictions.[4] *Christiania General Ins. Corp. of N.Y. v. Great*

*Am. Ins. Co.*, 979 F.2d 268, 278 (2d Cir. 1992) (citing *Zeig* for the proposition that "excess

carrier must pay claims to extent its layer is pierced even though underlying carrier settled with

insured for less than the full amount of underlying carrier's liability"); *Pereira v. Nat'l Union*

*Fire Ins. Co. of Pittsburgh, Pa.*, No. 04 Civ. 1134 (LTS), 2006 WL 1982789, at *7 (S.D.N.Y.

July 12, 2006) (citing *Zeig* in denying excess insurer's motion to dismiss premised upon

argument that excess insurer owed no obligation "to provide any coverage unless and until the

underlying insurance policies have been exhausted by actual payment"); *see generally* Ostrager

& Newman, Handbook on Insurance Coverage Disputes § 13.04 (15th ed. 2009); *see also*

*Koppers Co. v. Aetna Casualty & Surety Co.*, 98 F.3d 1440, 1454 (3d Cir. 1996) ("[S]ettlement

with the primary insurer functionally 'exhausts' primary coverage and therefore triggers the

excess policy . . . .") (applying Pennsylvania law); *UNR Indus. Inc., v. Continental Cas. Co.*, 942

F.2d 1101, 1108 (7th Cir. 1991) ("Whether or not the underlying insurer performed the

obligations within its coverage, [the excess insurer] remains liable for claims beyond that

underlying coverage.") (emphasis omitted) (applying Illinois law); *Continental Ins. Co. v.*

*Northern Indiana Pub. Serv. Co.*, Nos. 2:05-cv-156, 2:05-cv-210, 2011 WL 1322530, at *6 (N.D.

Ind. Apr. 5, 2011) ("[Insured's] failure to procure a settlement to the full extent of the policy

---

[4]  New York law clearly governs this case because the First Layer and Second Layer Reinsurance
Agreements were issued in New York (see Compl. Exh. D), and the covered property was located in New
York. *See Safeco Ins. Co. of Am. v. Discovery Prop. & Cas. Ins. Co.*, No. 05 Civ. 8625 (DC), 2009 WL
436329, at *4 (S.D.N.Y. Feb. 23, 2009) (explaining that with regard to insurance contracts, the law of the
state that is the principal location of the insured risk applies) (citing *Zurich Ins. Co. v. Shearson Lehman
Hutton, Inc.*, 84 N.Y.2d 309, 318 (1994)). Tokio Marine cannot argue otherwise as it relied upon New
York law in support of its pending motion to dismiss Lexington's Fourth Cause of Action. *See* Defendant's
Memorandum of Law in Support of Its Motion to Dismiss the Fourth Cause of Action in Plaintiff's
Complaint, at pp. 2-5, filed February 10, 2011 [Docket No. 9].

limits does not preclude the secondary insurers from being held liable for the amount in excess of the terms of the primary insurance . . . .") (applying Indiana law).

The rule announced in *Zeig* applies with full force to this case. Here, Port Authority settled with American Home for a sum that was less than the per-occurrence limit of the AH Policy. (Answer ¶¶ 24, 89.) Tokio Marine, like the defendant in *Zeig*, argues that Lexington's obligations under the excess policies are not triggered unless and until the full limit of the AH Policy is actually paid. (Answer ¶ 92.) As in *Zeig*, Tokio Marine's position must be rejected; neither Lexington nor Tokio Marine have any "rational interest" in whether Port Authority collected the full $10 million under the AH Policy so long as Lexington (and, in turn, Tokio Marine) is only called upon to pay that portion of Port Authority's property loss arising from the September 11 attacks that exceeds the limit of the AH Policy. *Zeig*, 23 F.2d at 666.

Moreover, the policy concerns about discouraging compromise and prolonging litigation that underlie the rule announced in *Zeig* are clearly applicable in this case. Under Tokio Marine's position, all of the property insurers involved in the Port Authority Litigation would need to insist that each insurer in each underlying layer pay 100% of its per-occurrence limits in order to preserve their right to collect reinsurance for losses they incur. As a practical matter, this would "prevent an adjustment of the [Port Authority Litigation] which is both convenient and commendable" because no insurer would be willing to either forfeit its reinsurance coverage or pay 100 cents on the dollar in settlement. *Id.* The end result would be to prolong the Port Authority Litigation – "[a] result harmful to the insured, and of no rational advantage to the insurer." *Id.*; *see also Stonewall Ins. Co. v. Superior Court*, No. B223251, 2010 WL 4277559, at *6 (Cal. Ct. App. 2d Nov. 1, 2010) (noting purpose of rule in *Zeig* is to avoid delay and promote settlement).

**B.    In Any Event, Port Authority's Release Of Its Claim Against American Home In Settlement Exhausts The AH Policy Limit For Purposes Of Triggering Lexington's Obligations**

Neither the First Excess Binder nor Second Excess Binder contain any express language stating that the excess coverage shall apply only after the AH Policy is exhausted by payment of claims.  (Compl. Exhs. B & C.)  But even if there were such an express or implied requirement, Lexington would still be entitled to judgment on its First Cause of Action.

In *Zeig*, the excess policy expressly stated that coverage "shall apply and cover only after all other insurance herein referred to shall have been exhausted in the payment of claims to the full amount of the expressed limits of such other insurance." 23 F.2d at 665.  The Second Circuit declined to follow cases holding that such language required "collection of the primary policies as a condition precedent to the right to recover excess insurance." *Id.* at 666.  Instead, the court held that claims are deemed paid to the full amount of the expressed underlying limits "if they are settled and discharged, and the primary insurance is thereby exhausted." *Id.*  As reasoned by the Second Circuit:

> There is no need of interpreting the word 'payment' as only relating to payment in cash.  It often is used as meaning the satisfaction of a claim by compromise, or in other ways.  To render the policy in suit applicable, claims had to be and were satisfied and paid to the full limit of the primary policies.

*Id.*

Here, in exchange for American Home's settlement payment of approximately $3.6 million, Port Authority forever released all claims against American Home under the AH Policy. (Answer ¶ 89.)  Accordingly, the settlement and release fully satisfied Port Authority's claim for $10 million under the AH Policy asserted in the Port Authority Litigation and constituted full payment and exhaustion of the AH Policy per-occurrence limit even though the actual cash amount paid by American Home was only $3.6 million. *Zeig*, 23 F.2d at 666;

13

*Pereira*, 2006 WL 1982789, at *7 (rejecting the excess insurer's interpretation of the policy language to require exhaustion by actual payment up to the underlying limits, explaining that to do so would result in a "windfall" for the excess insurers); *see also Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 658 (7th Cir. 2010) (applying Indiana law); *Pacific Employers Ins. Co v. Clean Harbors Envtl. Servs. Inc.*, No. 08 C 2180, 2011 WL 813925, at *3 (N.D. Ill. Feb. 24, 2011) (applying Illinois law); *Stargatt v. Fidelity & Cas. Co. of N.Y.*, 67 F.R.D. 689, 690-91 (D. Del. 1975), *aff'd* 578 F.2d 1375 (3d Cir. 1978) (applying Delaware law); *Lightfoot v. Hartford Fire Ins. Co.*, No. 07-4833, 2011 WL 197982, at *5 (E.D. La. Jan. 20, 2011) (explaining that policy limits may be exhausted by settlement agreement, under which the insurer "paid a percentage of the total limit and the [insured] assumed responsibility for the remainder").

## CONCLUSION

For the reasons set forth above, Lexington respectfully requests that this Court grant judgment on the pleadings in its favor with respect to the First Cause of Action and issue an order pursuant to Rule 12(c) of the Federal Rules of Civil Procedure: (i) declaring that Lexington's coverage obligations under the First and Second Excess Binders are not contingent upon exhaustion of the per-occurrence limit of the underlying AH Policy; (ii) alternatively, declaring that Port Authority's release of all claims for coverage under the AH Policy constituted exhaustion of the per-occurrence limit of the AH Policy, without regard to the actual cash payment made to Port Authority under the AH Policy, for purposes of triggering Lexington's coverage obligations under the First and Second Excess Binders; and (iii) providing such other and further relief as the Court deems just and proper.

Dated:  May 4, 2011

                                    SIMPSON THACHER & BARTLETT LLP


                                    By:   /s/ Andrew S. Amer
                                          Andrew S. Amer
                                          425 Lexington Avenue
                                          New York, New York 10017-3954
                                          Telephone: (212) 455-2000
                                          Facsimile: (212) 455-2502
                                          Email: aamer@stblaw.com

                                    *Attorneys for Plaintiff Lexington Insurance
                                    Company*