UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
LEXINGTON INSURANCE COMPANY,               :
                                            :
            *Plaintiff*,                    :
                                            :
   v.                                      :
                                            :   11 cv 0391 (DAB)
TOKIO MARINE & NICHIDO FIRE                 :
INSURANCE COMPANY LIMITED,                  :
as successor to NICHIDO FIRE & MARINE       :
INSURANCE COMPANY LIMITED                   :
                                            :
            *Defendant*.                  :
------------------------------------------------------------X


## TOKIO MARINE'S MEMORANDUM OF LAW IN OPPOSITION TO LEXINGTON'S MOTION FOR JUDGMENT ON THE PLEADINGS ON COUNT I

David M. Spector, Esq.                Brian J. Neff, Esq.
Antony S. Burt, Esq.                  SCHIFF HARDIN LLP
Amy M. Rubenstein, Esq.               666 Fifth Avenue
SCHIFF HARDIN LLP                     Suite 1700
233 South Wacker Drive                New York, New York 10103
Chicago, Illinois 60606               Tel: (212) 753-5000
Tel:  (312) 258-5500
                                      *Attorneys for Defendant*

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................................. 1
ARGUMENT ..................................................................................................................................... 3
I.    LEXINGTON'S MOTION FAILS BECAUSE AN EXCESS INSURANCE
POLICY IS NOT TRIGGERED UNTIL A LOSS EXCEEDS THE PRIMARY
POLICY LIMITS ................................................................................................................... 4
    A.    Tokio Marine's Position Does Not Conflict with Zeig ............................................ 4
    B.    The Policy Language Precludes Lexington's Claim ............................................... 8
II.    LEXINGTON'S MOTION FAILS BECAUSE THERE ARE MATERIAL
FACTUAL ISSUES RELATED TO LEXINGTON'S REINSURANCE CLAIM ......... 10
    A.    Judgment on the Pleadings Cannot Be Granted When the Material Facts
Are Disputed. ......................................................................................................... 10
    B.    Discovery Is Required to Resolve the Coverage Dispute ..................................... 12
CONCLUSION ................................................................................................................................ 13

# **TABLE OF AUTHORITIES**

Page

**Cases**

*Allstate Ins. Co. v. Am. Home Assurance Co.*, 837 N.Y.S.2d 138 (N.Y. App. Div. 2007) .......... 12

*Am. Commercial Lines LLC v. Water Quality Ins. Syndicates*, No. 09 Civ. 7957 (LAK), 2010 WL 1379763 (S.D.N.Y. Mar. 29, 2010) ....................................................................... 11

*Am. Ins. Co. v. N. Am. Co. for Prop. & Cas. Ins.*, 697 F.2d 79 (2d Cir. 1982) .......................... 7, 8

*Am. Re-Insurance Co. v. SGB Univ. Builders Supply, Inc.*, 532 N.Y.S.2d 712 (N.Y. Sup. Ct. 1988) ............................................................................................................................... 9

*Bageanis v. Am. Bankers Life Assurance Co. of Fla.*, No. 91 C 1261, 1991 WL 136016 (N.D. Ill. 1991) ....................................................................................................................... 11

*Bovis Lend Lease LMB, Inc. v. Great Am. Ins. Co.*, 855 N.Y.S.2d 459 (N.Y. App. Div. 2008) ...................................................................................................................................... 9

*Christiana Gen. Ins. Corp. v Great Am. Ins. Co.*, 979 F.2d 268 (2d Cir. 1992) ............................ 4

*Citigroup, Inc. v. Nat'l Union Fire Ins. Co.*, No. H-06-3666, 2010 WL 2179710 (S.D. Tex. May 28, 2010) ................................................................................................................. 8

*Comerica Inc. v. Zurich Am. Ins. Co.,* 498 F. Supp. 2d 1019 (E.D. Mich. 2007) ......................... 8

*Cont'l Ins. Co. v. N. Ind. Pub. Serv. Co.*, 2:05-cv-156, 2:05-cv-210, 2011 WL 1322530 (N.D. Ind. Apr. 5, 2011) ........................................................................................................ 7

*Granite State Ins. Co. v. ACE Am. Reinsurance Co.*, 849 N.Y.S.2d 201 (N.Y. App. Div. 2007) ...................................................................................................................................... 13

*Great Am. Ins. Co. v. Bally Total Fitness Holding Corp.,* No. 06 C 4554, 2010 WL 254219 (N.D. Ill. June 22, 2010) ............................................................................................ 8

*Hayden v. Paterson*, 594 F.3d 150 (2d Cir. 2010) ....................................................................... 10

*Hosp. Building Co. v. Trustee of Rex Hosp.*, 425 U.S. 738 (1976) ............................................... 11

*Ignazio Messina & C.S.P.A. v. Ocean Repair Serv. Co.*, No. 86 Civ. 7898 (KMW), 1991 WL 116336 (S.D.N.Y. June 17, 1991) .............................................................................. 11, 13

*Interstate Commerce Comm'n v. Chester*, 26 F. Supp. 710 (E.D. Pa. 1939) ............................... 11

*Koppers Co., Inc. v. Aetna Cas. & Sur.*, 98 F.3d 1440 (3d Cir. 1998) ...................................... 6, 7

*Lightfoot v. Hartford Fire Ins. Co.*, No. 07-4833, 2011 WL 197982 (E.D. La. Jan. 20, 2011) ......................................................................................................................................... 7

*N. River Ins. v. ACE Am. Reins. Co.,* 361 F.3d 134 (2d Cir. 2004) ......................................... 7, 13

*PaineWebber, Inc. v. Int'l Mobile Machines, Corp.*, No. 91 Civ. 7353, 1992 WL 75068 (S.D.N.Y. March 30, 1992) ............................................................................................... 3, 11

*Pereira v. Nat'l Union Fire Ins. Co.*, No. 04 Civ. 1134 (LTS), 2006 WL 1982789 (S.D.N.Y. July 12, 2006) ...................................................................................................... 7

*Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London,* 73 Cal. Rptr. 3d 770 (Ct. App. 2008) ................................................................................................................. 8

*Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639 (2d Cir. 1988) ............................................... 10

*Sheppard v. Beerman*, 18 F.3d 147 (2d Cir. 1994) ...................................................................... 11

*Stargatt v. Fidelity & Cas. Co.,* 67 F.R.D. 689 (D. Del. 1975), *aff'd,* 578 F.2d 1375 (3d Cir. 1978) ............................................................................................................................ 4, 6, 7

*Tishman Constr. Corp. v. Great Am. Ins. Co.,* 861 N.Y.S.2d 38 (N.Y. App. Div. 2008) .............. 9

*Travelers Indem. Co. v. SCOR Reinsurance Co.*, 62 F.3d 74 (2d Cir. 1995) ............................... 13

*Travelers Prop. Cas. Ins. Co. v. Nat'l Union Ins. Co.*, 621 F.3d 697 (8th Cir. 2010)............... 9, 12

*Trinity Homes LLC v. Ohio Cas. Ins. Co.,* 629 F.3d 653 (7th Cir. 2010) ............................... 5, 6, 7

*Zeig v. Mass. Bonding & Ins. Co.*, 23 F.2d 665 (2d Cir. 1928) ................................................. 2, 4

**Other Authorities**

Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes §13.04 .............................................................................................................................. 5

Ostrager & Vyskocil, Modern Reinsurance Law and Practice (2d ed.) .......................................... 7

Thomas M. Bower, *Partial Settlements by Primary Insurers,* 29 Tort & Ins. L.J. 536 (1994) ............................................................................................................................... 4

**Rules**

Federal Rule of Civil Procedure 10 .............................................................................................. 11

Federal Rule of Civil Procedure 12(c) ......................................................................................... 10

Defendant, Tokio Marine & Nichido Fire Insurance Company Limited, as successor to Nichido Fire & Marine Insurance Company Limited ("Tokio Marine"), respectfully submits this memorandum of law in opposition to Lexington Insurance Company's ("Lexington") motion for judgment on the pleadings as to Count One of its Complaint.

## INTRODUCTION

This case arises from a dispute among the Port Authority of New York and New Jersey ("Port Authority"), American Home Insurance Co. ("American Home") and Lexington regarding insurance coverage under primary and excess insurance policies for Port Authority buildings at or near the World Trade Center. (Complt. ¶¶ 24, 32, 53, 83.) The Port Authority's primary policy with American Home has a "$10 million per-occurrence limit of liability for *loss*"; its first excess policy with Lexington provides "an $11.5 million part of $40 million per occurrence *excess of $10 million*"; and its second excess policy with Lexington provides "a $9.5 million part of $50 million per occurrences excess of $50 million." (Id. ¶¶ 24, 26, 32 (emphasis added).) In 2010, American Home and Lexington paid the Port Authority $11 million for the loss and allocated the loss settlement among their policies: $3.6 million to American Home's primary policy and $7.4 million to Lexington's excess policies. (Id. ¶¶ 83, 87.)

Because American Home's primary policy applied to losses up to $10 million, Lexington's first excess policy should have been called upon only to pay the $1 million remaining part of the $11 million loss settlement. (Id. ¶ 24.) But because American Home had no reinsurance for the primary policy, and Tokio Marine reinsured all of Lexington's risk on the excess policies, American International Group ("AIG") — which owns both American Home and Lexington — unreasonably and in bad faith allocated $7.4 million of the $11 million loss to Lexington's excess layer policies that Tokio Marine reinsured. (Additional Defenses ¶¶ 15-18.)

American Home and Lexington had the same counsel and the same interest in settlement: to maximize the reinsurance coverage. (Id.)

Accordingly, when Lexington sought reinsurance for $7.4 million of the $11 million settlement, Tokio Marine declined the claim because, among other reasons, AIG had not allocated the loss settlement in good faith. (Id. ¶¶ 14-19.) Tokio Marine explained to Lexington that only $1 million of the loss exceeded the primary policy limits, and offered to pay Lexington that amount. (Complt. ¶¶ 92, 95.) Although Tokio Marine remained optimistic that Lexington would provide a valid reason for this allocation, Lexington instead filed this lawsuit. But this lawsuit does not answer why an excess insurer, which received only $385,825 in premium ($287,500 for the first excess and $98,325 for the second excess), should fund $7.4 million of an $11 million settlement when the primary insurer, which received $2.2 million in premium, paid only $3.6 million. (Complt., Ex. A at 2, Ex. B and Ex. C.)

Now Lexington asks this Court to find as a matter of law that its excess insurance coverage obligation was triggered before the Port Authority loss exhausted the American Home primary policy. (Lexington Mem. at 3.) However, as a matter of law — indeed, the very law that Lexington relies on — an excess insurance policy can, at most, "only [be] called upon to pay such portion of the loss as was in excess of the limits of [the primary] policies." *Zeig v. Mass. Bonding & Ins. Co.*, 23 F.2d 665, 666 (2d Cir. 1928). Here, the primary policy limit is $10 million. (Complt. ¶ 24.) And the primary policy specifically provides that any excess policy does not reduce the limit of liability under the primary policy. (Id., Ex. A at p. 23.) Stated another way, both the primary policy and the law require allocating the first $10 million of the loss to the primary policy.

Moreover, although Lexington characterizes Tokio Marine's declinature as solely a legal question of whether the primary layer coverage must be exhausted before an excess layer may be triggered (Mem. at 7-8, 12; Complt ¶¶ 92, 109), Tokio Marine expressly denies that it declined coverage solely based on the exhaustion issue. (Answer ¶¶ 92, 109). Indeed, Tokio Marine also declined coverage because Lexington allocated the loss in bad faith, primarily for the purpose of maximizing its reinsurance recovery. (Answer ¶¶ 92, 109; Additional Defenses ¶¶ 14-19.) This fact-based reinsurance coverage defense prevents the Court from entering judgment on the pleadings, even if Lexington could demonstrate a legal basis for failing to allocate the first $10 million of the loss to the primary policy.

## ARGUMENT

Judgment on the pleadings is "a[n] extraordinary remedy which can be granted only in the unusual circumstance where the pleadings clearly demonstrate that one party is entitled to judgment as a matter of law." *PaineWebber, Inc. v. Int'l Mobile Machines, Corp.*, No. 91 Civ. 7353, 1992 WL 75068, at *1-*2 (S.D.N.Y. March 30, 1992). Lexington's motion for judgment on the pleadings fails for two reasons. First, as a matter of law, the settlement at issue here triggered the Lexington excess coverage only up to the $1 million Tokio Marine offered to Lexington as indemnity. Second, material factual issues exist related to Lexington's reinsurance claim because a principal issue in this case is whether AIG allocated the $11 million loss between its two subsidiary companies to maximize its reinsurance recovery from Tokio Marine. Whether AIG allocated the loss in good faith is an issue of fact, requiring discovery, which therefore precludes judgment on the pleadings. *Id*.

I.  **LEXINGTON'S MOTION FAILS BECAUSE AN EXCESS INSURANCE POLICY IS NOT TRIGGERED UNTIL A LOSS EXCEEDS THE PRIMARY POLICY LIMITS**

The lynch-pin of Lexington's motion is *Zeig v. Mass. Bonding & Ins. Co.*, 23 F.2d 665, 666 (2d Cir. 1928) which, according to Lexington, "remains the seminal decision interpreting New York law in this Circuit . . . ." (Mem. at 11.)[1]  Even assuming that it does, Tokio Marine's position in this case is perfectly consistent with *Zeig*'s holding that an excess insurance policy only pays the portion of the loss that exceeds the primary policy limit. *Zeig*, 23 F.2d at 666. Because American Home's primary policy had a $10 million limit, under *Zeig*, Lexington can only be liable for $1 million of the $11 million loss settlement.  And because a reinsurer only indemnifies covered losses, Tokio Marine's liability cannot exceed $1 million.

Moreover, *Zeig* expressly notes that the policy at issue there said nothing about collecting the primary insurance before the excess applied.  *Id*.  Accordingly, Tokio Marine's position is consistent with *Zeig* because the policy language applicable here contemplates that American Home should pay all losses up to its limits of liability before Lexington is required to respond. (Complt. Ex. A at p. 2, 23, Ex. B, Ex. C.)

    A.    <u>**Tokio Marine's Position Does Not Conflict with *Zeig.*_**</u>

Lexington argues that, under *Zeig,* American Home can pay only $3.6 million of an $11 million loss and pass off the remaining $7.4 million to Lexington and, ultimately, Tokio Marine.

---

[1] Because the Second Circuit decided *Zeig* in the pre *Erie v. Tompkins* era under general common law principles, it was not a ruling under New York law. *See Stargatt v. Fidelity & Cas. Co.,* 67 F.R.D. 689, 690-91 (D. Del. 1975), *aff'd,* 578 F.2d 1375 (3d Cir. 1978); Thomas M. Bower, *Partial Settlements by Primary Insurers,* 29 Tort & Ins. L.J. 536, 540 (1994).  In the 83 years since this decision, no New York state court has ever cited *Zeig* in support of Lexington's position in this case.  Nor does *Christiana Gen. Ins. Corp. v Great Am. Ins. Co.*, 979 F.2d 268 (2d Cir. 1992), which Lexington cites, base its holding on *Zeig.* (Mem. at 2, 11.)  *Christiana* is distinguishable on its facts because it involved a ceding company's obligation to provide notice to its reinsurer — not exhaustion of a primary insurer's limits. 979 F.2d at 274-78.

This argument betrays a fundamental misunderstanding of *Zeig*'s holding: under *Zeig*, Lexington could "only [be] called upon to pay such portion of the loss as was in excess of the limits of [American Home's ] policies." 23 F.2d at 666. Indeed, *Zeig* only permitted recovery from the excess insurer "if th[e] loss was greater than the amount of the expressed limits of the primary insurance." *Id*. Because the loss here is $11 million, it only exceeds American Home's $10 million limit by $1 million, *i.e.*, the $1 million that Tokio Marine has offered to pay Lexington.

In addition to *Zeig* itself, Lexington's other cited authority supports Tokio Marine's position. The Ostrager and Newman treatise describes *Zeig*'s holding as follows:

> Thus, in *Zeig***,** the court allowed the insured to become effectively self insured for the gap he had created between primary and excess insurance as a result of his release of the primary insurance for less than the policy limits.  ***The action against the excess insurer sought to recover only the amount of plaintiff's provable loss in excess of the primary limits. It did not seek contribution from the excess insurer for any portion of the loss within primary limits.***

Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes §13.04 (emphasis added) (*cited* in Lexington's Mem. at 11). Here, because the Port Authority settled with American Home for less than the primary limits, the Port Authority — not Lexington — remained liable for the "gap" between the settlement amount and the primary limits. Lexington does not allege that the Port Authority filled this gap. Instead, the pleadings demonstrate that Lexington paid the $6.4 million difference and now expects Tokio Marine to fund that uncovered amount.

The case-law that Lexington cites similarly requires the policyholder to pay the "gap" between the amount paid by the primary insurer in settlement and the attachment point of the excess coverage. For example, in *Trinity Homes LLC v. Ohio Cas. Ins. Co.,* 629 F.3d 653 (7th Cir. 2010) (*cited* in Lexington's Mem. at 14), the court held that an umbrella policy was

triggered by a settlement in which the primary insurers paid 75% of their limits and the policyholder "made up the difference." *Id.* at 658.  As authority, the court cited *Zeig*:

> In *Zeig,* the Second Circuit held that exhaustion of the primary limit could be accomplished by way of a settlement agreement where the primary insurer paid some of the limit and the insured paid the remainder, so long as the contract did not provide otherwise.

*Id.* at 659.  In the settlement at issue here, American Home paid 36% of its limits but, unlike the settlement at issue in *Trinity Homes,* there is no evidence that the Port Authority paid the remaining 64%.  Instead, Lexington improperly absorbed that portion of the loss.

In *Stargatt v. Fidelity & Cas. Co.*, 67 F.R.D. 689, 690-91 (D. Del. 1975), *aff'd,* 578 F.2d 1375 (3d Cir. 1978) (*cited* in Lexington's Mem. at 14), the policyholder was sued for over $4.5 million.  The primary policy provided limits of $250,000 over a $50,000 deductible.  After the policyholder settled his claim with the primary carrier for $135,000, the excess insurers sought a summary judgment declaring that the underlying limits had not been exhausted.  Citing *Zeig*, the court held that "[t]he excess insurers will be liable only for covered losses in excess of $300,000." *Id.* at 691.  Like the excess insurers in *Stargatt,* Lexington (and Tokio Marine) are only liable for losses exceeding the primary limits.

In *Koppers Co., Inc. v. Aetna Cas. & Sur.*, 98 F.3d 1440, 1454 (3d Cir. 1998) (*cited* in Lexington's Mem. at 11), the court held that excess insurance could be triggered by a policyholder's settlement for less than the full limits of the primary policy.  In doing so, however, the court noted an important limitation:

> settlement with the primary insurer functionally "exhausts" primary coverage and therefore triggers the excess policy-though by settling the policyholder loses any right to coverage of the difference between the settlement amount and the primary policy's limits.  ***The excess insurer cannot be made liable for any part of this difference because the excess insurer never agreed to pay for losses below a specified floor (i.e., below the limits of the underlying primary policies.)***

*Id.* at 1454 (emphasis added).  Like the excess insurers in *Koppers,* Lexington is not liable for the $6.4 million difference between the American Home's $3.6 million settlement and its $10 million limits.  Notwithstanding this well established limitation on the rule set forth in *Zeig* — a limitation set forth clearly in the very authority Lexington cites to the Court[2] — Lexington paid that difference to the Port Authority and, now, wants Tokio Marine to fund that *ex gratia* payment.

However, as Lexington's reinsurer, Tokio Marine is not required to reimburse Lexington for payments it made that were properly allocable to the primary layer of coverage.  *See, e.g.,* Ostrager & Vyskocil, Modern Reinsurance Law and Practice (2d ed.) at 9-28 ("it is universally recognized that there is no reinsurance coverage for a cedent's voluntary or *ex gratia* payments -- *e.g.,* payments involving items clearly and unambiguously outside the scope of the underlying policy."); *Am. Ins. Co. v. N. Am. Co. for Prop. & Cas. Ins.*, 697 F.2d 79, 81 (2d Cir. 1982), (a reinsurer is not obligated to indemnify cedent for its settlements where payments were for losses that were not covered under a ceded policy); *see also N. River Ins. v. ACE Am. Reins. Co.,* 361 F.3d 134, 142 (2d Cir. 2004) (in determining a reinsured loss, "[w]hen a claim is adjudicated or compromised at a figure that falls within, *e.g.,* the first layer of coverage, the risk as to the second and higher layers is eliminated, and no 'loss' is suffered in any layer other than the

---

[2] The other cases Lexington cites in its Memorandum are in accord with *Trinity Homes, Stargatt* and *Koppers.  See, e.g., Cont'l Ins. Co. v. N. Ind. Pub. Serv. Co.*, 2:05-cv-156, 2:05-cv-210, 2011 WL 1322530, at *6 (N.D. Ind. Apr. 5, 2011) (*cited* in Lexington's Mem. at 11) (to the extent that NIPSCO settled with the primary insurers for less than the applicable limits, NIPSCO is considered self-insured up to the policy limits); *Lightfoot v. Hartford Fire Ins. Co.*, No. 07-4833, 2011 WL 197982 (E.D. La. Jan. 20, 2011) (*cited* in Lexington's Mem. at 14) (the primary insurer "paid a percentage of the total limit and [the insured] assumed responsibility for the remainder"); *Pereira v. Nat'l Union Fire Ins. Co.*, No. 04 Civ. 1134 (LTS), 2006 WL 1982789 , at *7 (S.D.N.Y. July 12, 2006) (*cited* in Lexington's Mem. at 2, 11) (acknowledging that excess insurers might be called upon to provide coverage "within their respective layers").

first"). Thus, under even the broadest reading of *Zeig*, because Lexington had no obligation to pay the $6.4 million, Tokio Marine's reinsurance obligations have not been triggered.

      B.      <u>**The Policy Language Precludes Lexington's Claim.**</u>

The *Zeig* court recognized that the parties to an insurance contract are free to agree to policy language that conditions an excess insurer's obligation upon actual payment by the primary insurer of its full limits of liability. *See* 23 F.2d at 666. Consistent with *Zeig,* several courts have not hesitated to enforce policy language that unambiguously requires exhaustion of the primary limits by payment of claims by the primary carrier.[3] Both the American Home primary policy and the Lexington excess policy, by incorporation of the primary policy's terms, contain such language:

> <u>EXCESS INSURANCE</u>
>
> Excess insurance is insurance over the limit of liability set forth in this policy. ***The existence of such excess insurance shall not prejudice the coverage under this policy nor will it reduce any liability hereunder.***

---

[3] *Great Am. Ins. Co. v. Bally Total Fitness Holding Corp.,* No. 06 C 4554, 2010 WL 254219, at *5 (N.D. Ill. June 22, 2010) (holding *Zeig* inapplicable where the language of the excess policies "is not ambiguous regarding the manner in which the underlying insurance policies must be exhausted"); *Citigroup, Inc. v. Nat'l Union Fire Ins. Co.*, No. H-06-3666, 2010 WL 2179710 *2 (S.D. Tex. May 28, 2010) ("The unambiguous terms of the policies prevent Citigroup from circumventing the payment requirement by functional exhaustion-a label without substance or vigor. Here, because Lloyd's did not pay its limit of $50 million, the excess carriers are not required to pay"); *Comerica Inc. v. Zurich Am. Ins. Co.,* 498 F. Supp. 2d 1019 (E.D. Mich. 2007) (distinguishing *Zeig* and holding exhaustion required actual payment of claims by primary insurer to trigger coverage under excess policies); *Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London,* 73 Cal. Rptr. 3d 770, 783 (Ct. App. 2008) (noting that "authorities are mixed on *Zeig* and its rationale" in holding that exhaustion clause precluded excess insurer's liability after settlement with primary carrier for less than its limits).

(Complt. Ex. A at p. 23 (emphasis added), Ex. B and Ex. C.)[4]  Indeed, a court recently interpreted the same language contained in the American Home and Lexington policies "as mirroring the standard industry practices . . . by disavowing an ability to reduce [the primary insurer's] own liability due to the possible existence of excess insurance, the [primary insurer's] policy implicitly recognizes that excess insurers are the last insurers obligated to pay claims." *Travelers Prop. Cas. Ins. Co. v. Nat'l Union Ins. Co.*, 621 F.3d 697, 719 (8th Cir. 2010).  The settlement at issue here violates this provision because it reduces American Home's liability by $6.4 million.

Moreover, neither the premiums charged by Lexington, nor those charged by its reinsurer, Tokio Marine, reflect an assumption that they would be required to cover losses falling within American Home's layer of coverage.  *See, e.g., Bovis Lend Lease LMB, Inc. v. Great Am. Ins. Co.*, 855 N.Y.S.2d 459, 467 (N.Y. App. Div. 2008) (policy was "true excess" insurance where "the policy premium . . . was quite modest in comparison with the aggregate amount of potential coverage"); *Tishman Constr. Corp. v. Great Am. Ins. Co.*, 861 N.Y.S.2d 38, 41 (N.Y. App. Div. 2008) (lower premiums "confirmed that those policies were "true" excess policies, since the low premiums reflected the underwriters' assessments that the policies were unlikely to ever be invoked"); *Am. Re-Insurance Co. v. SGB Univ. Builders Supply, Inc.*, 532 N.Y.S.2d 712 (N.Y. Sup. Ct. 1988) ("Excess liability insurance is a low-cost method of providing extended protection where primary (and secondary) insurance leaves off").

Indeed, American Home received $2.2 million in premium, while Lexington received only $385,825 in premium for both the first and second excess layers ($287,500 for the first

---

[4] Lexington's First Layer Excess Binder incorporated this term of coverage (Complt. ¶ 28.)  Both the First and Second Layer Excess Binders provided that the immediately underlying

-9-

excess and $98,325 for the second excess).  (Complt., Ex. A at 2, Ex. B and Ex. C.)  Were Lexington and American Home not affiliated companies under the AIG umbrella — a situation that AIG used as an opportunity to pass off American Home's unreinsured losses to Tokio Marine through a collusive settlement — Lexington would have rejected $6.4 million of the claim because it is not covered under the policy terms.  That Lexington and American Home are affiliated companies, however, does not create coverage where none exists.

## II. LEXINGTON'S MOTION FAILS BECAUSE THERE ARE MATERIAL FACTUAL ISSUES RELATED TO LEXINGTON'S REINSURANCE CLAIM.

Even assuming that Lexington, as an excess insurer, has a legal justification for accepting $7.4 million of the $11 million settlement, it still cannot pass the loss onto Tokio Marine if the underlying allocation was motivated primarily by an intent to maximize reinsurance recovery. Tokio Marine has pled this reinsurance coverage issue in its Answer and Additional Defenses. (Additional Defenses ¶¶ 14-19.)  Because AIG's motives in allocating a loss raise factual questions, Count I cannot be decided on a motion for judgment on the pleadings.

### A. Judgment on the Pleadings Cannot Be Granted When the Material Facts Are Disputed.

Federal Rule of Civil Procedure 12(c) permits judgment on the pleadings only "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988).  As Lexington concedes, a court deciding a Rule 12(c) motion must draw all reasonable inferences from the pleadings in the non-moving party's favor.  (Mem. at 8, citing *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010); *Sheppard v. Beerman*, 18 F.3d 147, 150

---

(Continued from previous page)
coverage served as a deductible.  (Complt. Exs. B & C.)

(2d Cir. 1994); *Am. Commercial Lines LLC v. Water Quality Ins. Syndicates*, No. 09 Civ. 7957 (LAK), 2010 WL 1379763, at *2 (S.D.N.Y. Mar. 29, 2010).)[5]

When the plaintiff moves for judgment on the pleadings, a court must carefully consider the defendant's answer — and its denials. Indeed, "[o]n a plaintiff's motion for a judgment on the pleadings, all well-pleaded material allegations of defendant's answer are taken as true, and all plaintiff's allegations which have been denied are taken as false." *Bageanis v. Am. Bankers Life Assurance Co. of Fla.*, No. 91 C 1261, 1991 WL 136016, at *1 (N.D. Ill. 1991) (citing *Hosp. Building Co. v. Trustee of Rex Hosp.*, 425 U.S. 738 (1976)); *see also Interstate Commerce Comm'n v. Chester*, 26 F. Supp. 710 (E.D. Pa. 1939) (denying plaintiff's motion for judgment on pleadings because defendant had denied material allegation in answer).

Moreover, if a party requires discovery to resolve a factual issue related to a claim or defense in the pleadings, then a motion for judgment on the pleadings is premature. *Ignazio Messina & C.S.P.A. v. Ocean Repair Serv. Co.*, No. 86 Civ. 7898 (KMW), 1991 WL 116336, *6 (S.D.N.Y. June 17, 1991) (denying with prejudice a Rule 12(c) motion because it was impossible to determine issue without discovery); *PaineWebber*, 1992 WL 75068 at *2 (denying plaintiff's 12(c) motion because defendant denied allegations in answer and was "[a]t minimum . . . entitled to conduct discovery in order to obtain evidence to support its claims"). Here, because Tokio Marine is the non-moving party, the Court must consider Tokio Marine's answer, defenses, and the resultant issues of fact related to Lexington's coverage claim.

---

[5] The pleadings include the complaint, the answer and any written instruments attached as exhibits. *See* Fed. R. Civ. P. 10.

### B. Discovery Is Required to Resolve the Coverage Dispute.

Tokio Marine's answer and defenses raise issues of fact related to Lexington's claimed reinsurance coverage that render Lexington's motion premature at best.

Lexington alleges in its Complaint and this motion that Tokio Marine's "sole" coverage defense is that an excess policy is not triggered until a loss exceeds the primary policy limits. (Mem. at 7-8, 12; Complt. ¶¶ 92, 109.)  But Tokio Marine has expressly denied that its only coverage defense is exhaustion. (Answer ¶¶ 92, 109, Additional Defenses ¶¶ 14-19.)  The loss resulting from Lexington's settlement also is not covered because Lexington's parent company, AIG, allocated the loss between its two wholly-owned subsidiaries (American Home and Lexington) to maximize its reinsurance recovery from Tokio Marine. (Additional Defenses ¶¶ 14-19.)

Lexington's motion suggests that, as a matter of law, AIG has unfettered discretion to allocate a settlement amount between its two subsidiaries to maximize the reinsurance recovery. However, Lexington does not and cannot cite any authority in support of this irrational proposition.  AIG does not enjoy an unqualified right to allocate any settlement in its sole discretion.  Rather, when an insurer allocates a settlement "primarily for the purpose of increasing its reinsurance recovery," a reinsurer can avoid paying the claim. *Travelers Cas. & Surety Co. v. Ins. Co. of N. Am.*, 609 F.3d 143, 158 (3d Cir. 2010) (applying NY law); *Allstate Ins. Co. v. Am. Home Assurance Co.*, 837 N.Y.S.2d 138, 144 (N.Y. App. Div. 2007) (reinsurer not obligated to pay claim where the insured's allocation "reflects an effort to maximize unreasonably the amount of collectable reinsurance").[6]

---

[6] Moreover, included in AIG's already-suspect loss allocation are amounts paid to the Port Authority to fully buy back the Port Authority's primary and excess insurance policies and thereby "forever release[] all claims against American Home and Lexington . . . ." (Complt. ¶

While Lexington alleges repeatedly that it acted in good faith when it agreed to allocate the majority of the loss and this policy buy back to Lexington's reinsured excess layers,[7] (Complt. ¶¶ 2, 7-8, 85-88, 96, 114-15, 121, 133) Tokio Marine disagrees and it expressly "denies that this allocation was in good faith." (Answer ¶¶ 2, 7-8, 85-88, 96, 114-15, 121, 133; Additional Defenses ¶¶ 14-19). Whether Lexington allocated in good faith over two-thirds of a loss settlement to an excess insurer that received only 15% of the premium raises an issue of fact on which Tokio Marine is entitled to discovery. (Complt. ¶ 87, Ex. A at 2, Ex. B, Ex. C.) *See also Granite State Ins. Co. v. ACE Am. Reinsurance Co.*, 849 N.Y.S.2d 201, 203-04 (N.Y. App. Div. 2007) (holding that whether a settlement is made in good faith is an issue of fact). Lexington's motion is nothing more than a transparent effort to avoid discovery on this principal issue. Because this factual issue precludes any motion for judgment on the pleadings, this Court should deny Lexington's motion. *Ignazio*, 1991 WL 116336, *6.

## CONCLUSION

For these reasons, Tokio Marine respectfully requests that this Court deny Lexington's motion for judgment on the pleadings.

---

(Continued from previous page)
89.) Although AIG presumably paid some portion of the $11 million settlement to the Port Authority to buy back the American Home and Lexington policies, it allocated $7.4 million of that amount as a reinsured loss. (Complt. ¶¶ 87, 89.) A buy back and release of future liabilities is "not on account of any 'loss'" to which Tokio Marine's reinsurance responds, "but rather to extinguish contractual liability." *N. River Ins. Co. v. ACE Am. Reinsurance Co.*, 361 F.3d 134, 143 at fn7 (2d Cir. 2004). Because Tokio Marine agreed only to indemnify Lexington for losses, Tokio Marine has no obligation to fund a policy buy back. S*ee Travelers Indem. Co. v. SCOR Reinsurance Co.*, 62 F.3d 74, 76 (2d Cir. 1995) ("The relationship created is strictly one of indemnification").

[7] Of course, had Lexington and American Home been <u>unrelated</u> entities, Lexington itself would question why it bore the majority of an $11 million settlement. This lopsided allocation is a principal issue in this case. (Complt. ¶¶ 2, 7-8, 85-88, 96, 114-15, 121, 133.)

| | |
|---|---|
| DATED:  June 3, 2011 | SCHIFF HARDIN LLP |
| Brian J. Neff, Esq.<br>SCHIFF HARDIN LLP<br>666 Fifth Avenue<br>Suite 1700<br>New York, New York 10103<br>Tel: (212) 753-5000<br>Fax: (212) 753-5044<br><br>ATTORNEYS FOR TOKIO MARINE &<br>NICHIDO FIRE INSURANCE COMPANY<br>LIMITED | By:  /s/ Brian J. Neff<br>David M. Spector, Esq.<br>Antony S. Burt, Esq.<br>Amy M. Rubenstein, Esq.<br>SCHIFF HARDIN LLP<br>233 S. Wacker Drive<br>Chicago, Illinois 60606<br>Tel: (312) 258-5500<br>Fax: (312) 258-5600 |

CH2\90072317.

-14-