UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY,<br><br>             Plaintiff,<br><br>        -against-<br><br>TOKIO MARINE & NICHIDO FIRE INSURANCE COMPANY LIMITED, as successor to NICHIDO FIRE & MARINE INSURANCE COMPANY LIMITED,<br><br>          Defendant. | Civil Action No. 11-0391 (DAB) |

LEXINGTON'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS WITH RESPECT TO ITS FIRST CAUSE OF ACTION

Andrew S. Amer, Esq.
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
(212) 455-2000 (telephone)
(212) 455-2502 (facsimile)

*Attorneys for Plaintiff Lexington Insurance Company*

## TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................1

ARGUMENT .......................................................................................................................2

I.      *ZEIG* AND ITS PROGENY COMPEL GRANTING LEXINGTON'S
        MOTION FOR JUDGMENT ON THE PLEADINGS AS TO ITS
        FIRST CAUSE OF ACTION.......................................................................................2

        A.      Lexington's Excess Obligations Are Triggered As Long As Port
                Authority's Loss – Not the Settlement Amount with American Home –
                Exceeds the AH Policy Limits................................................................. 2

        B.      The Policy Language Does Not Require Exhaustion of Primary Limits
                Through Payment by American Home ................................................. 6

II.     LEXINGTON'S MOTION FOR A DECLARATORY JUDGMENT
        UNDER THE FIRST CAUSE OF ACTION DOES NOT IMPLICATE
        TOKIO MARINE'S DEFENSE REGARDING THE SETTLEMENT
        ALLOCATION .......................................................................................................8

CONCLUSION.....................................................................................................................9

TABLE OF AUTHORITIES

**Cases**

*Christiania General Ins. Corp. of N.Y. v. Great American Ins. Co.*, 979 F.2d 268
  (2d Cir. 1992) ................................................................................................. 3

*Consolidated Edison Co. of N.Y. v. Fyn Paint & Lacquer Co., Inc.*, No. CV 00-3764,
  2005 WL 139170 (E.D.N.Y. Jan. 24, 2005) ................................................. 3

*Continental Ins. Co. v. Northern Indiana Pub. Serv. Co.*, Nos. 2:05-cv-156, 2:05-cv-
  210, 2011 WL 1322530 (N.D. Ind. Apr. 5, 2011) ......................................... 5

*Erie v. Tompkins*, 304 U.S. 64 (1938) ...................................................................... 3

*In re Northwest Airlines Corp.*, 393 B.R. 337 (Bankr. S.D.N.Y 2008) .................... 3

*Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440 (3d Cir. 1996) ....................... 6

*Lightfoot v. Hartford Fire Ins. Co.*, No. 07-4833, 2011 WL 197982
  (E.D. La. Jan. 20, 2011) .............................................................................. 5, 7

*Pacific Employers Ins. Co. v. Clean Harbors Envtl. Servs., Inc.*, No. 08 C 2180,
  2011 WL 813925 (N.D. Ill. Feb. 24, 2011) ................................................... 6

*Pereira v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 04 Civ. 1134 (LTS),
  2006 WL 1982789 (S.D.N.Y. July 12, 2006) ............................................ 3, 6

*Stargatt v. Fidelity & Cas. Co. of N.Y.*, 67 F.R.D. 689 (D. Del. 1975),
  *aff'd* 578 F.2d 1375 (3d Cir. 1978) ........................................................ 3, 4, 6

*Travelers Property Casualty Ins. Co. of Am. v. National Union Ins. Co. of Pittsburgh*,
  621 F.3d 697 (8th Cir. 2010) ..................................................................... 7, 8

*Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653 (7th Cir. 2010) .................. 5

*U.S. Fidelity & Guaranty Co. v. Treadwell Corp.*, 58 F. Supp. 2d 77 (S.D.N.Y. 1999) ............... 3

*Zeig v. Massachusetts Bonding & Insurance Co.*, 23 F.2d 665 (2d Cir. 1928) .................... passim

**Other Authorities**

Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage
  Disputes § 13.04 (15th ed. 2009) ................................................................. 5

Plaintiff Lexington Insurance Company respectfully submits this reply memorandum of law in further support of its motion for judgment on the pleadings with respect to its First Cause of Action pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## INTRODUCTION

Tokio Marine fails to provide any reason why the Second Circuit's seminal decision in *Zeig v. Massachusetts Bonding & Insurance Co.*, 23 F.2d 665 (2d Cir. 1928), does not control the outcome of Lexington's motion.  Under *Zeig*, Lexington is entitled to a declaration that its excess coverage is triggered to the extent that Port Authority's property loss stemming from the September 11, 2001 terrorist attacks on the World Trade Center exceeds the excess attachment point, regardless of whether the underlying AH Policy is exhausted by Port Authority's settlement with American Home.[1]

Instead, Tokio Marine contends that *Zeig* supports its own view that exhaustion of the underlying primary policy limit is required based upon two fatally flawed arguments.  First, in applying the holding of *Zeig* to this case, Tokio Marine conflates the "loss" suffered by Port Authority with the amount of the settlement reached between the Port Authority and American Home.  *Zeig* requires that the entire loss sustained by the insured – not the amount of the primary coverage settlement – be greater than the excess attachment point in order to trigger the excess insurer's obligation.  Accordingly, so long as the entire loss sustained by Port Authority due to the total destruction of the North and South Towers and damage to other buildings in the World Trade Center vicinity exceeds the excess attachment point, Lexington's coverage obligation is triggered regardless of the settlement amount paid by American Home.

Second, Tokio Marine attempts to rely on the statement in *Zeig* recognizing that parties are free to adopt policy language requiring exhaustion of the primary policy by actual

---

[1]     The defined terms used in this reply brief are the same as those used in Lexington's opening brief.

payments, but fails to point to any language in the policies at issue here containing such language. Instead, Tokio Marine cites to irrelevant policy language stating merely that the existence of excess insurance "shall not prejudice the coverage under [the primary] policy nor will it reduce any liability hereunder."  *See* Opp. Br. at 8.[2]  Nothing in the policy language at issue here provides any basis for reaching a different result than the Second Circuit reached in *Zeig*.

Finally, Tokio Marine suggests that issues of fact exist concerning whether the allocation of the settlement between the AH Policy and the Lexington First Excess Binder was made in good faith.  This argument misses the mark because the settlement allocation has no relevance to the relief sought by Lexington under its First Cause of Action, which is the only cause of action that is the subject of this motion.  Under the First Cause of Action, Lexington seeks a determination as a matter of law based on the terms of the subject policies that Lexington's excess coverage obligations are triggered when the loss sustained by the Port Authority exceeds the underlying primary limit, whether or not the AH Policy limit has been exhausted.  The Court has no need to address the settlement allocation in order to grant such relief.

## ARGUMENT

I.    ***ZEIG*** **AND ITS PROGENY COMPEL GRANTING LEXINGTON'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO ITS FIRST CAUSE OF ACTION**

A.    **Lexington's Excess Obligations Are Triggered As Long As Port Authority's Loss – Not the Settlement Amount with American Home – Exceeds the AH Policy Limits**

Tokio Marine argues that the decision in *Zeig v. Massachusetts Bonding & Insurance Co.*, 23 F.2d 665 (2d Cir. 1928), supports its own position that the AH Policy limit must be exhausted through payments by American Home before Lexington's coverage

---

[2]    All references herein to "Opp. Br. at ___" refer to Tokio Marine's Memorandum of Law in Opposition to Lexington's Motion for Judgment on the Pleadings on Count I, filed June 3, 2011 [Docket No. 23].

obligations are triggered.  However, Tokio Marine's argument is based upon conflating "loss" with the settlement amount.[3]

According to Tokio Marine, under *Zeig* only that portion of Port Authority's $11 million "loss" in excess of the $10 million AH Policy limit – or $1 million – is covered under the Lexington First Excess Binder (and, in turn, Tokio Marine's First Layer Reinsurance Agreement). *See* Opp. Br. at 5.  In so arguing, Tokio Marine erroneously equates Port Authority's loss under its first-party property insurance coverage with the amount it agreed to accept in settlement of its claims against American Home and Lexington.  Port Authority's "loss" is the amount of damage it sustained as a result of the total destruction of the North and South Tower of the World Trade Center and damage to its other buildings at or near the World Trade Center site.  *See* Answer ¶¶ 50-51, 53, 63-66; Lex. Br. at 5-6.[4]  *Zeig* clearly establishes that it is the insured's *loss* – not settlement – that must exceed the excess policy attachment point before the insured is entitled to recover from its excess insurer regardless of exhaustion of the primary policy limit. 23 F.2d at 665-66; *see also Stargatt v. Fidelity & Cas. Co. of N.Y.*, 67 F.R.D. 689, 690-91 (D. Del. 1975), *aff'd* 578 F.2d 1375 (3d Cir. 1978).

If the *Zeig* court considered the amount of the settlement between the primary insurer and the insured to be the "loss" as urged by Tokio Marine, the result in *Zeig* would have come out the other way.  In *Zeig*, the plaintiff insured had three primary policies of burglary

---

[3]     Tokio Marine's suggestion that *Zeig* reflects only federal common law and not New York law (Opp. Br. at 4 n.1) ignores the fact that courts in this Circuit, applying New York law, have cited *Zeig* following the Supreme Court's decision in *Erie v. Tompkins*, 304 U.S. 64 (1938).  *See Christiania General Ins. Corp. of N.Y. v. Great American Ins. Co.*, 979 F.2d 268, 278 (2d Cir. 1992); *In re Northwest Airlines Corp.*, 393 B.R. 337, 346 (Bankr. S.D.N.Y 2008); *Pereira v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 04 Civ. 1134 (LTS), 2006 WL 1982789, at *7 (S.D.N.Y. July 12, 2006); *Consolidated Edison Co. of N.Y. v. Fyn Paint & Lacquer Co., Inc.*, No. CV 00-3764, 2005 WL 139170, at *5 n.4 (E.D.N.Y. Jan. 24, 2005); *U.S. Fidelity & Guaranty Co. v. Treadwell Corp.*, 58 F. Supp. 2d 77, 88 n.11 (S.D.N.Y. 1999).

[4]     All references herein to "Lex. Br. at ___" refer to Memorandum of Law in Support of Lexington's Motion for Judgment on the Pleadings With Respect to its First Cause of Action, filed May 4, 2011 [Docket No. 22].

insurance providing total limits of $15,000 and an excess policy of burglary insurance issued by the defendant with a limit of $5,000.  *Id.* at 665.   The plaintiff settled with the primary insurers for a total payment of $6,000 and then sought excess coverage from the defendant.  *Id.*  The Second Circuit could not have been more clear in distinguishing between the "loss" and the settlement amount in ruling against the excess insurer and allowing the insured to prove the amount of its loss in excess of the primary limits:  "Only such portion of the loss as exceeded, *not the cash settlement*, but the limits of [the primary policies], is covered by the excess policy."  *Id.* at 666 (emphasis added).  If the Second Circuit considered the "loss" to be the settlement amount, then the above-quoted holding would make no sense and there would have been no need to allow the insured to prove the amount of the loss.  Accordingly, Tokio Marine's position directly conflicts with the holding in *Zeig*.

   The decision in *Stargatt v. Fidelity & Casualty Co. of N.Y.*, 67 F.R.D. 689 (D. Del. 1975), *aff'd* 578 F.2d 1375 (3d Cir. 1978), similarly undermines Tokio Marine's position that an insured's "loss" is the same as the amount of its settlement with a primary insurer.  In *Stargatt*, the insured alleged covered losses greater than $4.5 million.  *Id.* at 690.  The insured's primary insurance policy had a $50,000 deductible and a $250,000 policy limit.  *Id.*  The insured settled its claims with its primary insurer for $135,000 (well below the primary policy limit) and then sought coverage from the defendant excess insurers.  *Id.*  The excess insurers moved for summary judgment claiming that their obligations were not triggered because the insured had not exhausted the primary policy limit.  *Id.*  In denying the motion, the court allowed the insured to prove the amount of its covered losses and held that the excess insurers were liable for losses beyond the primary policy limit – implicitly rejecting Tokio Marine's position that the settlement amount and the loss are the same.  *Id.* at 691.

Tokio Marine is also mistaken that Port Authority did not pay the "gap" between the settlement amount with American Home and the AH Policy limit.  Port Authority agreed to settle its claims with American Home for $3.6 million.  Answer ¶ 89.  However, under *Zeig* and its progeny, Port Authority is entitled to collect excess coverage only to the extent that its total loss exceeds the $10 million AH Policy limit.  Thus, Port Authority is "effectively self insured" and "[took] responsibility" for the $6.4 million gap between the settlement amount and policy limits.  *See Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 658 (7th Cir. 2010) ("[A] [primary] policy can be exhausted when an insured and a [primary] insurer enter into a settlement agreement where the primary insurer will pay a large percentage of the total limit and the insured takes responsibility for the remainder."); Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes § 13.04 (15th ed. 2009) ("[I]n *Zeig*, the court allowed the insured to become effectively self-insured for the gap he had created between primary and excess insurance as a result of his release of the primary insurer for less than the policy limits.").

Contrary to Tokio Marine's suggestion, Lexington is not liable for the $6.4 million "gap" between Port Authority's settlement amount with American Home and the AH Policy limit (*see* Opp. Br. at 7) because Lexington is not being called upon to cover any portion of Port Authority's loss within the $10 million AH Policy limit.  *See Lightfoot v. Hartford Fire Ins. Co.*, No. 07-4833, 2011 WL 197982, at *5 (E.D. La. Jan. 20, 2011) (noting that primary policy limits can be exhausted by settlement "whereby [the primary insurer] paid a percentage of the total limit and [the insured] assumed responsibility for the remainder as was done in the instant case"); *Continental Ins. Co. v. Northern Indiana Pub. Serv. Co.*, Nos. 2:05-cv-156, 2:05-cv-210, 2011 WL 1322530, at *6 (N.D. Ind. Apr. 5, 2011) (finding excess insurer liable for claims in excess of primary policy limits when insured settled for less than policy limits and is

"considered self-insured up to the policy limits"); *cf. Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1454 (3d Cir. 1996) (explaining that settlement exhausts primary policy limits, although excess insurer cannot be held liable for difference between settlement amount and policy limits).

**B.    The Policy Language Does Not Require Exhaustion of Primary Limits Through Payment by American Home**

In *Zeig*, the Second Circuit acknowledged that parties are free to provide in an excess insurance policy that the primary policy must be exhausted through actual payment by the primary insurer if they desire that to be the case.  23 F.2d at 666.  Tokio Marine seizes upon this language in *Zeig* in arguing that Lexington and Port Authority did exactly that here.  Opp. Br. at 8.  Not so.

Tokio Marine relies upon language in the AH Policy, which is incorporated by a following form provision into the Lexington First Excess Binder, providing that "[t]he existence of [] excess insurance shall not prejudice the coverage under this policy nor will it reduce any liability hereunder."  Opp. Br. at 8 (*quoting* Exs. A, B and C to Lexington's complaint).  This provision nowhere addresses whether the primary limit needs to be exhausted through actual payment made by American Home before the excess policy is triggered.  Rather, the provision merely confirms that the existence of excess coverage will not prejudice the rights of the excess insurer vis-à-vis the rights of the primary insurer.[5]

---

[5]    Several other decisions addressing more restrictive policy language than the language at issue in this case have found exhaustion can be accomplished other than by actual payment of primary limits by the primary insurer.  *See Pereira v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, No. 04 Civ. 1134 (LTS), 2006 WL 1982789, at *7 (S.D.N.Y. July 12, 2006) (finding policy language providing for exhaustion of underlying limits by "actual payment of claims or losses" did not necessarily excuse excess insurers from providing coverage due to insolvency of underlying insurer); *Stargatt*, 67 F.R.D. at 690 (rejecting interpretation of policy language triggering excess insurance "only when the Primary Policy in the amount of $250,000 . . . has been exhausted" to require limits to be "actually paid"); *Pacific Employers Ins. Co. v. Clean Harbors Envtl. Servs., Inc.*, No. 08 C 2180, 2011 WL 813925, at *1, 3 (N.D. Ill. Feb. 24, 2011) (holding that policy language requiring exhaustion by payment of losses "actually paid as judgments and settlements" did not mean the sole method of exhaustion was payment by the underlying insurer); *Lightfoot*, 2011 WL 197982,

In sharp contrast to the language quoted by Tokio Marine at issue here, the excess policy language in *Zeig* directly addressed the insured's need to exhaust the primary limit, and yet still fell short of requiring exhaustion through actual payment by the primary insurer to trigger the excess coverage. The excess policy in *Zeig* expressly stated that excess coverage "shall apply and cover only after all other insurance herein referred to shall have been exhausted in the payment of claims to the full amount of the expressed limits of such other insurance." 23 F.2d at 665. The Second Circuit declined to follow cases holding that such language required "collection of the primary policies as a condition precedent to the right to recover excess insurance." *Id.* at 666. Instead, the court held that even under this policy language, claims are deemed paid to the full amount of the expressed underlying limits "if they are settled and discharged, and the primary insurance is thereby exhausted." *Id. A fortiori*, the language relied upon by Tokio Marine from the Lexington First Excess Binder cannot justify a different result than the one reached by the Second Circuit in *Zeig*.[6]

Tokio Marine's reliance upon *Travelers Property Casualty Ins. Co. of Am. v. National Union Ins. Co. of Pittsburgh*, 621 F.3d 697 (8th Cir. 2010), is misplaced. In *Travelers*, the issue presented under language similar to the provision found in the AH Policy and quoted by Tokio Marine concerned subrogation rights, not whether primary limits had to be exhausted by actual payment in order to trigger excess obligations. *See Travelers*, 621 F.3d at 719. In discussing the subrogation issue, the *Travelers* court recognized that the policy language in question "implicitly recognizes that excess insurers are the last insurers obligated to pay claims and also the first insurers entitled to recover proceeds that are obtained from third parties and

---

at *1, 4 (finding that excess policy applicable only after "all primary and other underlying insurance has been exhausted" did not require underlying limits be "paid in full by underlying insurers").

[6]   Tokio Marine fails to address Lexington's argument that even if the Lexington First Excess Binder implicitly requires exhaustion of the AH Policy, Port Authority's release of its claims against American Home in settlement constitutes exhaustion under the holding of *Zeig*. Lex. Br. at 12-14.

represent insured losses." *Id.* The court applied this principle in relation to an excess insurer's priority right to subrogation proceeds as against the primary insurer. *Id.* The decision simply does not address the issue presented here concerning the exhaustion of primary limits to trigger excess coverage obligations.

## II. LEXINGTON'S MOTION FOR A DECLARATORY JUDGMENT UNDER THE FIRST CAUSE OF ACTION DOES NOT IMPLICATE TOKIO MARINE'S DEFENSE REGARDING THE SETTLEMENT ALLOCATION

Lexington's motion seeks judgment on the pleadings only with respect to its First Cause of Action. *See* Lex. Br. at 14. Specifically, Lexington seeks an order declaring that, as a matter of law, Lexington's coverage obligations under the First and Second Excess Binders were not contingent upon exhaustion of the per-occurrence limits of the underlying AH Policy, or in the alternative, that Port Authority's settlement and release of all claims under the AH Policy constituted exhaustion of the underlying per-occurrence limits. *See* Lex. Br. at 3.

Tokio Marine contends that this Court cannot grant Lexington its requested relief because there are genuine issues of material fact raised by Tokio Marine's affirmative defense concerning the bona fides of the settlement allocation which entitle Tokio Marine to discovery.[7] Opp. Br. at 10, 13; Additional Defenses ¶¶ 14-19. This affirmative defense does not in any way implicate Lexington's motion as to the First Cause of Action, which does not raise the propriety of the settlement allocation between primary and excess policies. More specifically, Lexington does not allege as a basis for relief under its First Cause of Action that it has "unfettered discretion to allocate a settlement amount between its two subsidiaries to maximize the reinsurance recovery." Opp. Br. at 12. Rather, the allocation of the settlement amount is

---

[7]        Although not relevant to this motion, Tokio Marine's suggestion that the allocation of the settlement is "suspect" and arbitrary is without any basis. Opp. Br. at 12 n.6. As set forth in the settlement agreement, Port Authority, American Home and Lexington agreed to allocate the settlement between the primary and first excess policies pro-rata based on policy limits. (Answer ¶¶ 87, 89). There is nothing suspect or arbitrary about such a common-sense method of allocation.

addressed by and limited to Lexington's Second Cause of Action, which is not the subject of this motion. *See* Compl. ¶¶ 111-126.

In short, Tokio Marine fails to raise any issues of fact relating to the trigger of Lexington's excess obligations that would preclude this Court from granting judgment as a matter of law with regard to the First Cause of Action.

<u>**CONCLUSION**</u>

For the reasons set forth above and in Lexington's opening brief, Lexington respectfully requests that this Court grant judgment on the pleadings in its favor with respect to the First Cause of Action and issue an order pursuant to Rule 12(c) of the Federal Rules of Civil Procedure: (i) declaring that Lexington's coverage obligations under the First and Second Excess Binders are not contingent upon exhaustion of the per-occurrence limit of the underlying AH Policy; (ii) alternatively, declaring that Port Authority's release of all claims for coverage under the AH Policy constituted exhaustion of the per-occurrence limit of the AH Policy, without regard to the actual cash payment made to Port Authority under the AH Policy, for purposes of triggering Lexington's coverage obligations under the First and Second Excess Binders; and (iii) providing such other and further relief as the Court deems just and proper.

Dated:  June 17, 2011

SIMPSON THACHER & BARTLETT LLP


By:   /s/ Andrew S. Amer
      Andrew S. Amer
      425 Lexington Avenue
      New York, New York 10017-3954
      Telephone: (212) 455-2000
      Facsimile: (212) 455-2502
      Email: aamer@stblaw.com

***Attorneys for Plaintiff Lexington Insurance
Company***