USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 09/07/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
LEXINGTON INSURANCE COMPANY,

                Plaintiff,

  -against-                      11 Civ. 391 (DAB)
                                    MEMORANDUM AND ORDER

TOKIO MARINE & NICHIDO FIRE INSURANCE
COMPANY LIMITED, as successor to
Nichido Fire & Marine Insurance
Company Limited,


                Defendant.
------------------------------------X
DEBORAH A. BATTS, United States District Judge


     Now before the Court is Defendant, Tokio Marine & Nichido Fire Insurance Company Limited, as successor to Nichido Fire & Marine Insurance Company Limited's ("Defendant" or "Tokio") Motion to Dismiss the Fourth Cause of Action in Lexington Insurance Company's ("Plaintiff" or "Lexington") Complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).

     Defendant argues that this case is a straightforward breach of contract case, as the issue is whether Plaintiff is entitled to recover $7.4 million for claims Plaintiff alleges are covered by "Reinsurance Agreements" between the parties. Defendant argues than in addition to its breach of contract claim (Count Three), Plaintiff improperly seeks the same relief under a claim for unjust enrichment (Count Four). Defendant argues that Plaintiff's quasi-contractual unjust enrichment claim must be dismissed because the parties have valid, enforceable contract

1

that governs this dispute.

Plaintiff, on the other hand, argues that it is entitled to assert, in the alternative, a claim for unjust enrichment where Defendant contests the terms of the agreement(s) that form the basis of the breach of contract claim.

For the reasons below, Defendant's Motion to Dismiss Plaintiff's Fourth Cause of Action in the Complaint is hereby GRANTED.

### I. FACTUAL BACKGROUND

In May 2001, Port Authority's primary carrier, American Home Assurance Company ("American Home"), issued a primary policy to Port Authority with a per-occurrence limit of $10 million (the "American Home Policy"). (Compl. ¶¶ 22-25.) Plaintiff issued part of two layers of excess property coverage to Port Authority (the "Lexington First-Layer Coverage" and the "Lexington Second-Layer Coverage"). (Compl. ¶¶ 26, 32.) The Lexington First-Layer Coverage provided a per-occurrence limit equal to an $11.5 million part of a $40 million insurance layer that covered property damage sustained by Port Authority in excess of $10 million. (Compl. ¶ 26.) The Lexington Second-Layer Coverage provided a per-occurrence limit equal to a $9.5 million part of a $50 million insurance layer that covered property damage sustained by Port Authority in excess of $50 million. (Compl. ¶ 32.)

Plaintiff issued its First-Layer and Second-Layer Coverage

as "fronting" policies for Defendant. (Compl. ¶¶ 27, 33.) Under this fronting arrangement, Defendant allegedly agreed to reinsure 100% of the risk under the Lexington First-Layer and Second-Layer Coverage. (Compl. ¶ 41-45.)

As a result of the two September 11, 2001 terrorist attacks on the World Trade Center Towers, Port Authority sustained damage in excess of $1 billion, which was equivalent to more than twice the value of Port Authority's per-occurrence insurance tower. (Compl. ¶¶ 47-54.) There was a coverage dispute between the tenants of the World Trade Center Towers and their property insurers regarding the number of occurrences arising from the two September 11 attacks. (Compl. ¶¶ 55.) The World Trade Center Tower tenants argued that the attacks constituted two occurrences, which would entitle the tenants to two times the property insurers' limits, while the property insurers argued that there was only one occurrence, which would entitle the tenants to only one limit. Following a trial, a jury determined that the two September 11 attacks constituted two separate occurrences, entitling the World Trade Center Tower tenants to two times their property insurers' limits. (Compl. ¶ 59.) The Second Circuit affirmed the District Court's judgment that there were two occurrences. (Compl. ¶¶ 60-61.)

Port Authority also took the position that there were two occurrences, resulting in a doubling of its coverage, and submitted an insurance claim to its insurers seeking to recover over $1 billion for the damage Port Authority sustained as a

result of the September 11 attacks. (Compl. ¶ 62.) Port Authority's insurers, including Plaintiff, only paid one per-occurrence limit to Port Authority. (Compl. ¶¶ 63-66.) Plaintiff paid $11.5 million under its First-Layer Coverage and $9.5 million under its Second-Layer Coverage. (Compl. ¶¶ 63-66.) Plaintiff submitted a reinsurance claim for these amounts to Defendant, which fully reimbursed Plaintiff for its $11.5 million and $9.5 million payments. (Compl. ¶ 67.)

Port Authority's insurers, including Plaintiff, engaged in "coverage litigation" over whether Port Authority could recover a second payment from its insurers in the amount of its full per-occurrence limits (the "Port Authority Litigation"). (Compl. ¶¶ 68-73.) After extensive negotiations, which Defendant was allegedly advised of, Port Authority, American Home, and Plaintiff entered into a settlement agreement, under which the $11 million settlement amount was allocated pro rata by limits between the American Home Policy, the Lexington First-Layer Coverage, and the Lexington Second-Layer Coverage. (Compl. ¶¶ 83-87.) In return for these payments, Port Authority forever released all claims against Plaintiff under its First-Layer and Second-Layer Coverage. (Compl. ¶ 89.) Plaintiff alleges that Defendant benefitted by the settlement because the settlement resolved all amounts that Defendant would ever have to pay under the "fronting arrangement" and eliminated the risk that Defendant would be required to reimburse Plaintiff for a second round of per-occurrence limits at $11.5 million and $9.5 million. (Compl.

¶ 90.)

Plaintiff ultimately submitted a claim to Defendant for reinsurance for $4,080,645.16 with respect to its First-Layer Coverage and for $3,370.967.74 with respect to the Lexington Second-Layer Coverage, but Defendant rejected the claim because Defendant maintained that $10 million should have been allocated to the American Home Policy. (Compl. ¶¶ 93-95.) Plaintiff asserts that Defendant is obligated to "follow the fortunes" of Plaintiff, i.e., that as reinsurer, Defendant must indemnify a preceding insurer for that insurer's settlement with an insured of a claim that is covered or potentially covered by the insurer as long as the settlement is fair, reasonable, and made in good faith. (Compl. ¶¶ 101-03.)

## II. DISCUSSION

Under New York law, a plaintiff may prevail on a claim for unjust enrichment by demonstrating: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc., 448 F.3d 573, 586-87 (2d Cir. 2006). It is important to note that, "[t]he theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement." Id. at 586-87 (quoting Goldman v. Metro. Life Ins. Co., 5 N.Y.3d 561, 572 (2005)).

"A 'quasi contract' only applies in the absence of an

express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment . . . ." Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388-89 (1987) (internal citations and quotation marks omitted). Thus, when a "valid and enforceable" written contract governs the subject matter in dispute, a plaintiff may not recover under a theory of unjust enrichment. See Beth Israel Med. Ctr., 448 F.3d at 587 (dismissing unjust enrichment claim because valid written agreement existed between parties).

There is no dispute whether there is a valid and enforceable written agreement between the parties. Plaintiff admits that it issued its First-Layer and Second-Layer Coverage "fronting" policies on behalf of Defendant and this fronting arrangement provides the basis for Defendant's alleged agreement to reinsure 100% of the risk under the Lexington First-Layer and Second-Layer Coverage. (Compl. ¶¶ 27, 33, 41-45.) Plaintiff's dispute is not whether a written contract exists and is applicable, but rather whether under the written contract, Defendant is obligated to "follow the fortunes" of Plaintiff in Plaintiff's settlement with Port Authority. Accordingly, Plaintiff's claim for unjust enrichment is not viable given the existence of a valid and enforceable written agreement between the parties that governs this dispute.

III. CONCLUSION

For the reasons above, Defendant's Motion to Dismiss Plaintiff's Fourth Cause of Action in the Complaint is hereby GRANTED.

SO ORDERED.

DATED:   New York, New York
         September 7, 2011

*Deborah A. Batts*
United States District Judge